# CHARLESTON.

## MOUNDSVILLE v. FOUNTAIN.

Submitted September 8, 1885.—Decided November 28, 1885.

1. By the statute-law of this State the town of Moundsville is authorized to require a license of any person selling spirituous liquors in the town, and to pass an ordinance forbidding the sale of spiritous liquors in the town without such license having been obtained, and for a violation of such ordinance to impose a reasonable fine and imprisonment not exceeding thirty days; and this punishment may be imposed by the mayor of the town by a summary proceeding, but from his judgment an appeal lies to the circuit court, where the case may be tried *de novo* before a jury.

2. The provisions of the statute-law conferring these powers on the town of Moundsville do not violate any of the provisions of our constitution.

*J. B. McLure* for plaintiff in error.

*Ewing, Melvin & Riley* for defendant in error.

Statement of the case by GREEN, JUDGE :

The town of Moundsville was incorporated by an act passed February 23, 1866. (Acts of 1866, ch. 60, and Constitution and Statutes of Va. and W. Va. 1861–66. p. 45.) The eighth section of this act confers on the mayor and aldermen of said town all the powers conferred by ch. 54 of the Code of Virginia. And this among other powers conferred on them the power to impose a town-tax upon any person engaged in any business or occupation for which a State-license is required, and to require a license to be obtained therefor. (Code of Virginia 1849, p. 286 and Code of 1860, p. 317.) The same power in the same words was conferred on all towns in this State by ch. 92, § 33 of Acts of 1882. On June 24, 1882, by virtue of this authority the common council of the town of Moundsville passed an ordinance, the first section of which was as follows : " It shall not be lawful for any person, without a license therefor from the town of Moundsville to sell or offer or expose for sale spirituous liquors, wine, porter, ale or beer or any drink of a like nature." The ninth section provides : " Any person violating the provisions of this section first shall upon conviction be fined not less than five nor more than twenty dollars and be imprisoned for a period not exceeding thirty days."

James H. Fountain, a resident of said town, having on July 4, 1882, violated the provisions of this first section, he was upon the complaint of Thomas Brannon proceeded against under this ninth section. The following is a copy of these proceedings :

" WEST VIRGINIA, TOWN OF MOUNDSVILLE, TO-WIT :

" Thomas Brannon, this day complained before me, L. B. Purdy, mayor of the town of Moundsville, that James H. Fountain, on July 4, 1882, within the said town of Moundsville, at his residence on Second street, did as affiant believes, sell spirituous liquors, wine, porter, ale and beer, and drinks of a like nature, without a license therefor from the said town of Moundsville, in violation of the provisions of section 1 of an ordinance adopted June 24, 1882, entitled, ' An ordinance respecting licenses for the sale of spirituous liquors.'

" Sworn to before me by the said Thomas Brannon on this 17th day of July, 1882.

" L. B. Purdy,
" *Mayor of the Town of Moundsville.*"

" State of West Virginia, Town of Moundsville, to-wit :
" *To Thomas Brannon, Sergeant of the Town of Moundsville,
    Greeting :*

" Proper information having been made on oath before the undersigned that James H. Fountain, on July 4, 1882, at his residence on Second street, within said town, did sell spirituous liquors, wine, porter, ale and beer, and drinks of a like nature, without a license therefor from the said town of Moundsville, in violation of the provisions of section 1 of an ordinance adopted June 24, 1882, entitled, ' An ordinance respecting licenses for the sale of spirituous liquors.'

" These are therefore, in the name of the State of West Virginia and of the town of Moundsville, to command you to summon the said James H. Fountain to appear before me, at my office, in said town, on the 19th day of July, 1882, at one o'clock, p. m., to answer the said complaint, and to be dealt with according to law.

" Given under my hand, this 17th day of July, 1882.

." L. B. Purdy,
"*Mayor of the Town of Moundsville.*"

" Town of Moundsville
        *vs.*
" James H. Fountain.

" Action began on July 17, 1882, upon the complaint in writing made under oath of Thomas Brannon, charging the defendant James H. Fountain with having on July 4, 1882, sold spirituous liquors, wine, porter, ale and beer and drinks of like nature, within the said town, without a license therefor from the said town of Moundsville, in violation of the provisions of sec. 1 of an ordinance adopted June 24, 1882, entitled an 'ordinance respecting licenses for the sale of spirituous liquors.' Whereupon a summons was issued directed to the sergeant of said town against the said defendant, to appear before the mayor of the town aforesaid, on the 19th day of July, 1882, at one o'clock, p. m., to answer the said town of the said offence.

" And now at this day, to-wit, July 19, 1882, came the said defendant, by his attorney, and filed a motion in writing to quash the complaint in this cause, which motion being argued, was overruled, and thereupon, on motion of the said defendant, this cause is continued until July 20, 1882.

"And now at this day to-wit, on July 20, 1882, came the said defendant and for plea in the aforesaid cause, says he is guilty, as charged in the said complaint; whereupon on the said plea of guilty the court assessed a fine of $20.00 and costs of this suit against said defendant and adjudged that in addition to the said fine and costs that the said defendant be imprisoned in the county jail of Marshall county, West Virginia, for the term of fifteen days and thereupon the said defendant moved the court to grant him an appeal from the judgment aforesaid.

"And now at this day to-wit, July 22, 1882, came the said defendant and tendered his bond in the penalty of $50.00, conditioned according to law with William Bryans as his security, and the said bond being deemed sufficient an appeal is hereby granted to said defendant from the judgment aforesaid.

"L. B. PURDY, *Mayor*."

This appeal was heard on Friday November 3, 1882, and said ordinance of the town of Moundsville was introduced in evidence and the circuit court of Marshall county took the following action and rendered the following judgment:

"This day came the town of Moundsville, by its attorneys, Ewing, Melvin and Riley, as well as the appellant by his attorney, J. B. McLure and the defendant moved the court to quash the complaint on which said cause was tried before said mayor, because the ordinance thereon alleged to have been violated by the defendant, is void, and this because it is *ultra vires*, and contrary to the constitution of this State. Thereupon, after argument it is considered by the court that said motion to quash be overruled. And the cause coming on for trial, the defendant pleaded guilty to the charge in the summons contained and waived a jury, and by agreement the cause was submitted to the court. Whereupon it is considered by the court that the said town of Moundsville recover of the defendant a fine of $20.00 and the costs of this

proceeding by the said town incurred as well as those before the mayor of said town as those in this court arising upon this appeal, and that the said defendant be imprisoned in the county jail of Marshall county for the term of fifteen days."

From this judgment the defendant, James H. Fountain obtained a writ of error and *supersedeas* on November 17, 1883.

Opinion by GREEN, JUDGE :

The first error relied upon by the counsel of the plaintiff in error is, that this ordinance of the town of Moundsville is void, because it was passed under the supposed authority of § 33 of ch. 92 of Acts of 1882. (Warth's Code, ch 47, sec. 33, p. 373.) When in point of fact this act took from the town of Moundsville the authority to pass such an ordinance, which the town always had theretofore possessed, as it repealed ch. 54 of the Code of Virginia being inconsistent therewith; and though it attempted to confer on Moundsville and all other towns in the State with a population less than 2,000 the same authority it took away, yet it failed to do so, as it violates § 30, Art. VI of our constitution ; first because the object of the act is not expressed in its title ; and secondly, because when a section of a law is amended, it can only be done by inserting the amended section at large in the new act. It is a sufficient answer to these views to say that if this ch. 92 of Acts of 1882 be inoperative as a violation of our constitution, then the very same power, which the authorities of Moundsville now claim to pass this ordinance, they can as well claim under the original charter of the town ; as this ch. 92 of Acts of 1882 can not be operative to take away this power and at the same time inoperative to confer the same power. In truth it is obvious, that it never was the intention of the legislature as is perfectly apparent on the face of ch. 92 of Acts of 1882, to alter in any way the power, which the town of Moundsville or any other town in the State then had to pass such an ordinance. It neither conferred any additional power on this subject on any town, nor did it take away from any town any power it then had on this subject.

The second error relied on in the argument of the plaintiff's counsel is, that this ordinance is void, because admitting that § 33 of ch. 92 of Acts of 1882 was in operation and applied to the town of Moundsville, yet it did not authorize

the passage of this ordinance requiring a license to be obtained from the town to sell spirituous liquors, as according to the interpretation of counsel the second clause excepts licenses to sell spirituous liquors from the general power to require licenses to be obtained from the town to engage in any occupation or business, for which a state license is required. This second clause says in substance, "But no licenses to sell spirituous liquors granted by a town shall be granted except as provided for in ch. 32 of the Code." This obviously does not except from the general power to require licenses to be obtained from the town whenever the State requires a license; but it simply requires such licenses to be granted if required by towns in the manner prescribed by this chapter of the Code. As for instance, sec. 11 of this Act requires before such license to sell spirituous liquor is granted, that the town-council shall enter on its journal or minutes, that the applicant is of good moral character and not of intemperate habits. This ch. 92 of Acts 1882 § 33 leaves this provision in operation. It seems impossible to construe sec. 33 otherwise. There is nothing in this second point.

His third position is that by reason of sec. 46 of Article VI. and sec. 24 of Article VIII. of our Constitution, the Legislature can not authorize municipal corporations to regulate or prohibit the sale of spirituous liquors or to superintend the same. One of these sections simply provides, that laws may be proposed regulating or prohibiting the sale of intoxicating liquors within the limits of the State. The other provides, that county courts shall have the superintendence and administration of the internal, police and fiscal affairs of the county, and that no license for the sale of intoxicating liquors in any town shall be granted by the county court without the consent of the municipal authorities thereof.

I am unable to see how the first of these provisions can prevent the Legislature from conferring on a municipal corporation whatever power it may deem proper in reference to the sale of spirituous liquors within the limits of the corporation. It has the undisputed power to confer on municipal corporations the power to legislate in reference to other matters in their limits; and there is nothing in this clause of the

Constitution to restrict its general power to confer legislative power on municipal corporations. Nor do I see how the second of the clauses, which confers on the county court of Marshall the power to regulate the sale of spirituous liquor in the county, can prevent the Legislature from authorizing the town of Moundsville to raise its revenue in part by licensing the sale of spirituous liquors. If the county court of Marshall deems proper, it can prevent the sale of liquor in the town of Moundsville by simply refusing to grant a license to any one to sell spirituous liquors within the town; for if it should so refuse to grant such license, and any one should sell spirituous liquors in the town, he would be liable to indictment under the State law prohibiting the sale of liquors any where in the State without a State license granted by the county courts generally. So that the county court of Marshall can still regulate or prohibit the sale of spirituous liquors in the town of Moundsville. In some counties the Legislature has gone further and has conferred on some towns the exclusive authority to regulate or prohibit the sale of liquors. The charters of the towns of Wheeling and of Wellsburg for instance confer such authority. But as it is not conferred on the town of Moundsville by its charter, there can, it seems to me, be no ground for claiming that the Legislature has in any way taken from the county court of Marshall county its right to regulate the internal police of the county to the full extent, that by the Constitution it is authorized or permitted to do.

The remaining points raised by counsel for the plaintiff in error may be considered together. They are, that this ordinance of the town of Moundsville is void, because it violates several sections of our bill of rights. Secs. 4 and 14 of our bill of rights (Warth's Code, p. 7 and 8,) provide that no person shall be held to answer for any crime, not cognizable by a justice, unless on presentment or indictment, and that only upon a trial by a jury of twelve men and in the manner prescribed by the fourteenth section. It is claimed, that the plaintiff in error in violation of these provisions has been made to answer for a crime, not cognizable by a justice, upon a summary proceeding before the mayor of the town of Moundsville and a judgment has been pronounced against

him by the circuit court of Marshall county on appeal without a trial by a jury or a compliance with the other requirements of sec. 14 of our bill of rights.    It is not claimed that a justice has any cognizance of such a crime, if it be one, as that, for which a judgment has been rendered against the plaintiff in error.    A justice has cognizance only of some five or six petty offences set out in ch. 50, sec. 19 of the Code as amended, (see Warth's Code, p. 430,) and no such crime, if it be one, as the one charged in the present case is among them.    It is claimed, that, if the offence, with which the plaintiff in error is charged, be a crime, then punishment has been inflicted upon him by the judgment of the circuit court rendered July 20, 1882, in violation of our bill of rights. This is certainly true, if the offence, with which the plaintiff in error is charged, is a crime within the meaning of our Constitution.

There has been much diversity in the decisions of the courts, as to whether these or like provisions in the constitutions of the different States prohibit the legislature from authorizing a municipal corporation to pass an ordinance punishing an offence, which by the common law or by a statute-law is a crime and punishable by the State-authorities as such.    There are decisions in many States, that the legislature can not constitutionally confer such authority on a municipal corporation.    Decisions may be found, which either expressly hold this, or which give great countenance to this view of the law.    Such decisions may be found in Arkansas, Georgia, Michigan, Missouri, Pennsylvania, South Carolina and Texas. See *Slattery, ex parte,* 3 Ark. 484; *Rector* v. *State,* 6 Ark. 187; *Darr* v. *Howard,* 6 Ark. 641; *Lewis* v. *State,* 21 Ark. 209; *Savannah* v. *Hassey,* 21 Ga. 80; *Jenkins* v. *Thomasville,* 35 Ga. 145; *Vinson* v. *Augusta,* 38 Ga. 342; *Slaughter* v. *People,* 2 Douglass 334; *Welch* v. *Stowell,* Doug. 334; *People* v. *Jackson,* 8 Mich 110; *Wayne County* v. *Detroit,* 17 Mich. 390; *People* v. *Detroit,* 18 Mich. 445; *Jefferson City* v. *Courtmain,* 9 Mo. 692; *Zyistra* v. *The Corporation of Charlestown,* 1 Bay 387; *Barter* v. *The Commonwealth,* 3 Penrose & Watts, 253; *Smith* v. *San Antonio,* 27 Tex. 646; *Barnes* v. *La Grange,* Tex. 416.    Of these cases I regard the cases of *Slaughter* v. *People,* 2 Douglas

(Mich.) 334, and *Savannah* v. *Hassey*, as the most satisfactory in their reasoning. On the other hand decisions may be found in many States, that the legislature has the power to authorize a municipal corporation to punish either any or some offences, which by the common law or statute-law are crimes punishable by the State courts, and that such person may be twice punished once by the State for the crime and once by the corporation for the violation of its ordinance, which is a different offence. Decisions, which hold this, or which give great countenance to it, are to be found in Alabama, Indiana, Minnesota, Nebraska, Maryland, New York, New Jersey, Missouri and Texas. See *The Mayor, &c. of Mobile* v. *Rouse*, 8 Ala. 515; *Mayor and Aldermen* v. *Allaire*, 14 Ala. 400; *Ambros* v. *The State*, 6 Ind. 352; *Shafer and wife* v. *Miamma*, 17 Md. 336; *State of Minnesota* v. *Charles*, 16 Minn. 478; *State* v. *Ludwig*, 21 Minn. 307; *The City of Brownville* v. *Cook*, 4 Neb. 101; *City of Brooklyn* v. *Trynble*, 31 Barb. 283; *Rogers* v. *Jones*, 1 Wend. 261; *Howe* v. *Treasurer of Plainfield*, 37 N. J. (8 Broom) 149; *City of St. Louis* v. *Bentz*, 11 Mo. 62; *Hamilton* v. *The State*, 3 Tex. 647.

And again decisions may be found in some States, which countenance the position that when a state-law inflicts a certain penalty for the commission of a crime, and the ordinance of a municipal corporation passed by legislative authority also punish the same crime if committed in the city, the State authorities and the municipal authorities have concurrent jurisdiction to punish the offence; but it can be punished only once and by the State or municipal authority, whichever first institutes proceedings. Decisions countenancing this view are to be found in *Kansas & Missouri Railway* v. *State of Kansas*, 3 Kansas 164; *State* v. *Cowan*, 29 Mo. 330; *State* v. *Gordon*, 10 Mo. 383; *State* v. *Wister*, 62 Mo. 593.

It will be at once perceived on reading these cases, that they can not be reconciled. The one class proceeds upon the the ground that the constitution forbids that any person shall be tried for a crime (some petty offences only being sometimes excepted as in the Constitution of West Virginia) except on presentment or indictment, and that all such crimes must be tried by a jury of twelve men, and that these are

deemed by us as fundamental requirements, the observance of which is necessary for the preservation of our liberties. Yet these fundamental principles are openly violated, when the legislature authorizes a municipal corporation by ordinance to make any or all crimes committed within such municipal corporation punishable by fine and imprisonment upon a summary proceeding before the mayor or police court. If the legislature has such power, then these fundamental and important principles of our Constitution are made totally inoperative in any town or city in the State. The answer to this reasoning as found in the other class of cases is, that the summary conviction before the mayor or police court is not for a crime committed in the city but for an offence against the town or city by a breach of one of its ordinances; that, though this offence be described in the ordinance in the identical words, in which a statutory crime is described in a statute, yet the violation of the ordinance is to be regarded only as an offence against the city or town, while the violation of the statute fixing the punishment to be inflicted for the crime described is an offence against the State, which is something entirely different, and therefore that for this offence described in the statute and in the ordinance in exactly the same words the accused may be twice punished, once by confinement in a jail under the summary conviction of a mayor or police court, and once, it may be, in the penitentiary or in the county jail on conviction of the crime by a jury.

Now in order to reach a conclusion as to whether this can be so, we must see what construction is placed on that provision of our bill of rights, which provides: "Nor shall any person in any criminal case be twice put in jeopordy of life or liberty for the same offence." We might reasonably anticipate, that the courts would put a liberal construction on this provision of the constitution in favor of the person, whose life or liberty is twice put in jeopardy. And an examination of the decided cases will show, that we will not be disappointed in this anticipation. This provision or a substitute for it appears in the constitution of a number of the States as well as in the constitution of the United States. It is in these constitutions worded: "Nor shall any person be subject for the same offence to be twice put in *jeopardy of life*

*or limb.*" Chief Justice Spencer in delivering the opinion of the court in the *People* v. *Goodwin*, 18 Johns. 201, says:

" The expression *jeopardy of limb* was used in reference to the nature of the offence and not to designate the punishment for an offence; for no such punishment as loss of limb was inflicted by the laws of any of the States, at the adoption of these constitutions. Punishment by the loss of the limb of the offender would be abhorrent to the feelings and opinions of the enlightened age when these constitutions were adopted, and it had grown into disuse in England, for a long period antecedently. We must understand the term ' *jeopardy of limb* ' as referring to offences which, in former ages, were punished by dismemberment and as intended to comprise the crimes denominated in the law, felonies."

The literal interpretation of this provision would have confined the accused to its protection, when the crime, of which he was accused, was either a capital offence or one, which might subject him, if found guilty, to dismemberment. Yet the courts extended unhesitatingly this provision to all felonies. Nor did they stop here; for, so far as I know, every State extended it by a judicial construction to protect the accused, whenever his punishment might be imprisonment of any sort, in other words, extended it to all common law misdemeanors and to all statutory crimes, when the punishment might be imprisonment either in the penitentiary or in the county jail. (*Commonwealth* v. *Old*, 5 Litt. 137.)

But while the courts held, that the provision, that the accused should not be put twice in jeopardy of limb should be so interpreted as to extend the protection to every one accused of a crime, which might be punished by imprisonment, which included all misdemeanors, yet they declined to extend the protection to persons accused of a statutory crime, the only punishment of which was a pecuniary fine. (*Jones* v. *The State*, 15 Ark. 261–70.) To remove all possible doubt we have wisely changed the phraseology of this portion of our constitution and instead of the words *jeopardy of life or limb* in our bill rights, we have substituted the words "jeopardy of life or liberty." So that under our constitution it is clear, that any one accused of a felony or misdemeanor or of a statutory crime, which may be punished by imprisonment is entitled to

the protection of this provision; and it is equally clear, that no one accused of a statutory crime, the only punishment of which is a pecuniary fine, can claim the benefit of this provision of our constitution. Accordingly our law provides, that a writ of error lies in criminal cases to the judgment of the circuit court in behalf of the State, only when the offence is a violation of the revenue laws. (Warth's Code, ch. 160, § 3, p. 852–3.) In these cases the punishment is a fine only. (Warth's Code, ch. 32, § 3, p. 217.) If the punishment had been fine and imprisonment, no writ of error could have been allowed the State. For, if after the accused has been acquitted, the State could obtain a writ of error, and by this judgment of the appellate court the decision of the court below should be reversed, and the case sent back for a new trial, it is obvious, that, if the punishment was imprisonment, the accused would be twice put in jeopardy of his liberty in violation of our bill of rights.

The decisions, to which we have referred, show that the courts, when the constitutional provision was so worded as to make it doubtful as to what crimes the accused must be charged with to entitle him to protection under this constitutional provision, put a liberal construction upon it extending the protection even further than the words of the provision would seem to justify. So it will be found, that the courts in deciding what was meant by the words *same offence* used in this provision have construed them liberally for the protection of the accused, and in many cases have extended their operation so as to cover cases, where the two alleged offences were not literally the same.

But an examination of the decisions will show a great diversity of opinion as to when two crimes, which are apparently distinct, can not both be prosecuted, because the accused is protected by this provision of the constitution. There are however some instances of this character, in which all the courts agree, that the accused can not be subjected to two prosecutions. Thus when one crime necessarily includes another and lower crime, if the accused be convicted of the higher offence, he can afterwards never be prosecuted for the lower offence; for, if this was permitted, it is obvious, he would be twice put in jeopardy of being punished for the

lower offence. There is in England and in some of the States a statutory criminal known as "a common seller of liquor." He is one who sells commonly spirituous or forbidden liquors without license; and it has been decided, that to establish this crime the State must prove at least three different sales by the accused, and in some States this alone would not suffice to prove the offence in all cases. If one be convicted of this offence, he can not afterwards be prosecuted for any separate sale of liquor without license prior to the institution of the proceedings against him as a common seller. (*State* v. *Watts*, 28 Vt. 598.) But in Maine the contrary was held (*State* v. *Jackson*, 35 Me. 228) though such holding is in obvious conflict with the rule above stated, which is universally admitted to be correct.

But there is not such a general agreement, where one crime necessarily includes another and lower crime, if the accused be convicted of the lower crime. In this case the decided weight of authority as well as reason is, that in such case too the accused can not afterwards be prosecuted for the higher offence; for, if he were so prosecuted, he would be again put in jeopardy for the lower crime which is a part of the higher crime. If, for instance, one be indicted for man-slaughter, he can not afterwards be indicted for the murder; for if he was so indicted, he would be twice put in jeopardy for the man-slaughter, which is necessarily included in a murder, in violation of the constitution. (*People* v. *Hancheller*, 48 Cal. 331.) So if one be indicted for an attempt to commit a rape, he can not afterwards be indicted for the rape, as the rape necessarily includes the attempt to commit rape, and if indicted for it he would be twice put in jeopardy for the attempt to rape. (*State* v. *Sheppard*, 7 Conn. 54.) So if the first indictment be for burning a dwelling-house uninhabited it will bar an indictment for the same burning of the dwelling-house, which charges that it was inhabited. (*Commonwealth* v. *Squire*, 1 Metc. 258.) So an indictment for an assault and battery will bar a subsequent indictment for a riot, in which such assault and battery was committed; for otherwise the accused might be twice punished for the battery, which was a part of the riot, and it may be the greater part of it. (*The Commonwealth* v. *Kinney*, 2. Va. Cases 139.) So if the riot occurred at a

religious meeting, the rioters could not be indicted for both the riot and for disturbing a religious meeting, though they could be indicted for either.   [2 Harring (Del.) 543.]   So it is decided in *State* v. *Cooper*, 1 Green, N. J. 362, that a defendant can not be indicted and punished for two distinct felonies growing out of the same identical act, and when one is a necessary ingredient of the other, and the State has selected and prosecutes one to conviction.   So it was decided in *State* v. *Smith*, 43 Vt. 324, when an offence is a necessary element in and constitutes an essential part of another offence, and both are in fact one transaction, a conviction or acquittal of one is a bar to the prosecution for the other.

Many other authorities might be cited establishing the same principles ; but in opposition to them there are a few, which hold, that a conviction or acquittal in order to be a bar to another prosecution must be for the same offence or for an offence of a higher degree and necessarily including the offence, of which the accused stands indicted. (*State* v. *Foster*, 33 Ia. 525, and the cases there cited.) But the law, as I have stated it, is sustained not only by reason but by the overwhelming weight of authority.   Indeed very many authorities have gone further and held that, though one act may constitute more than one crime, yet the doer of such act can be prosecuted for but one of these crimes, interpreting the " same offence " in our constitution to mean the " same criminal act." Bishop in his work on Criminal Law, vol. 1, sec. 1,061 *et seq.* cites numerous cases, where this meaning is in effect given to this provision of the constitution. For instance, if one blow wounds two men, a conviction for an assault and battery charged to have been committed on one of them is a bar to an indictment for it as committed on the other.   Or if the blow kills two men a person convicted of the homicide of one of them can not be tried for the homicide of the other. (*State* v. *Dawson*, 2 Tyler, 387 ; *Crocker* v. *State*, 47 Ga. 568 ; *Clem* v. *The State*, 42 Ind., opinion of Downey, judge ; *Benn* v. *The State*, 22 Ala. 9.) So in North Carolina, where there was a law requiring individuals to keep the streets in repair in a town, several indictments were found on the same day for breaches of this duty in respect to many streets ; and it was held, that the conviction of one would bar the proceedings on the others.

(*State* v. *Fayetteville*, 2 Murph. 371.) So it is generally held that, where a person at the same time steals several articles, this constitutes but one crime, and he can be indicted but once, whether the articles stolen belong to one or to several persons. (*Fisher* v. *Commonwealth*, 1 Barb. 211; *State* v. *Nelson*, 29 Maine 329; *State* v. *Williams*, 10 Humphreys 101; *Lorton* v. *The State*, 7 Mo. 55.) But there are decisions, that in such a case several indictments lie, and the larceny though committed at the same time of several articles is several distinct offences, for which distinct indictments would lie, especially if the articles taken belonged to different persons. (*Reg.* v. *Brettel*, Car. & M. 609; *State* v. *Thurston*, 2 McMullen 382.) But the authorities hold, that if a man in the night breaks and enters a dwelling-house intending to steal therein and does, he may be punished for burglary alone or for burglary and larceny, though it might well be considered but one criminal act. (*State* v. *Squires*, 11 N. H. 37; *State* v. *Brady*, 14 Vt. 353; *Commonwealth* v. *Leech*, 20 Pick. 356.) If in such case he is indicted for breaking, entering and stealing, the crime is but one. But if the first indictment is for burglary by breaking and entering with intent to steal, the accused may be afterwards indicted for the actual theft. (*State* v. *Warner*, 14 Ind. 572; *Wilson* v. *State*, 24 Conn. 57.)

These cases suffice to show the great conflict of authority upon the question, whether by the "same offence" is always meant the "same criminal act." Many more authorities might be cited; but they would only show the irreconcilable conflict of the decided cases on this point; and, as I do not deem it necessary in this case to express my opinion on this point, I shall refrain from citing more cases. The authorities are numerous and conflicting, and I am not prepared to say on which side is the weight of authority. Very many cases are cited by Bishop in his work on Criminal Law, vol. 1, from sec. 1060 to 1064 inclusive. His conclusion is, that "in principle and according to the better authority, while one act may constitute as many distinct offences as the legislature may choose to direct, for any one of which there may be a conviction without regard to the others, it is in the language of Cochburn, chief justice, 'a fundamental rule of law, that out of the same facts a series of charges can not be pre-

ferred.'    *Reg.* v. *Elnigton*, 9 Cox C. C. 86, 90.    To give our constitutional provision the force evidently meant, and to render it effectual 'the same offence' must be interpreted as equivalent to the same criminal act."

There is certainly much reason in this conclusion and many authorities to sustain it, but instances do arise, where justice would seem to require, that we give a more limited signification to the words "same offence," and that they should not always be interpreted as meaning " same criminal act." This idea is supported by many authorities.    As I have not investigated the matter to the extent, which its importance demands, and as this case may be according to my views decided without our reaching a definite conclusion on this point, I shall express no positive opinion on the subject; but the investigation, which has been given it, will materially aid us in reaching a proper conclusion in this case.    I will say however, that there is one case at least, where these words "same offence" have not been interpreted as the equivalent of "same criminal act," and where, it seems to me, they are properly otherwise interpreted, that is, where the criminal act is at the same time an offence against the laws of a State and those of the United States.    Where this is the case the accused may be twice punished for such criminal act, once by the State and again by the United States.    (*Moon* v. *The People of the State of Illinois*, 14 How. 13; *Fox* v. *The State of Ohio*, 5 How. 410.)    Justice Grier in delivering the opinion of the court in the first of these cases says on p. 20 :

"Every citizen of the United States is also a citizen of a State or territory.    He may be said to owe allegiance to two sovereigns, and may be liable to be punished for an infraction of the laws of either.    The same act may be an offence, or transgression of the laws of both.    Thus an assault upon the marshal of the United States, and hindering him in the execution of process, is a high offence against the United States, for which the perpetrator is liable to punishment; and the same act may also be a gross breach of the peace of the State, a riot, assault or murder, and subject the same person to a punishment, under the State laws, for misdemeanor or felony.    That either or both may (if they see fit) punish such offender can not be doubted.    Yet it can not be truly

averred that the offender has been twice punished for the same offence; but only that by one act he has committed two offences for each of which he is justly punishable."

This reasoning seems to me perfectly sound. But these decisions, as these opinions show, are based on the fact, that the one criminal act is an offence against two sovereignties, each of which has a right to enforce obedience to its laws entirely independently of the other; and this could not be done, if one of these sovereignties could stay the hands of the other in enforcing this obedience by beginning a prosecution against the offender. The State and the United States have in such case no concurrent jurisdiction. The United States government could not punish the offender in the supposed case for the murder, nor could the State punish the offender for hindering the marshal in the execution of legal process. There seems thus to be a necessity, that the State and the United States should act entirely independently of each other, and that neither could be prevented from punishing such an offender by the other government having already done so. The offences in such case do not seem to be the same, being offences against two different sovereignties.

These decisions of the United States Supreme Court are constantly relied on by those State courts, who hold that municipal corporations can by authority of the legislature pass ordinances making crimes, which are punishable by imprisonment in the State courts, offences against a municipal corporation, when committed within its limits, and punish them summarily by fine and imprisonment inflicted by the mayor or by a police court of the corporation. But it does seem to me, that these decisions give no countenance to this position. As Justice Grier's opinion clearly shows, the right of the United States courts to punish by imprisonment any person, who was one of a riotous assembly, which prevented the United States marshal from serving legal process, and the right of the State courts also to imprison such person for being one of the rioters, who by thus interfering with the marshal disturbed the peace, are claimed on the ground that the United States and the State are separate and distinct sovereignties, neither of which can interfere with the other in the enforcement of its laws. But a State and a municipal corporation occupy no such relation to each other.

The municipal corporation does not claim to be sovereign as does the United States; on the contrary it is the mere creature of the State-legislature subject to its absolute control and having no rights or powers except such, as the State-legislature chooses to confer upon it, and possessing these rights and powers only through the pleasure of the State-legislature. So that whatever is done by a municipal corporation is only done by the consent and approval of the State-legislature. If a municipal corporation punishes a crime, which by the laws of the State is punishable by imprisonment, it can do so only by authority conferred upon it by the State-legislature; and if our constitution prohibits the State from passing any law, whereby any person can be twice put in jeopardy of life or liberty for the same offence, then, it seems to me, it also prohibits the legislature from authorizing a municipal corporation to pass such law or ordinance. The legislature can not confer on any municipal corporation the power to pass any law or ordinance, which the constitution forbids it to pass. But it may confer on such municipal corporation the power to pass any law or ordinance for its own government, which the legislature itself can under the constitution enact. Having enacted therefore a law whereby any crime either a statutory crime or a common law crime is punishable by imprisonment either in the jail or in the penitentiary, it could not authorize the authorities of any municipal corporation to punish the same offence by imprisonment. For if it did so, it would violate our bill of rights, which provides that no person shall be put twice in jeopardy of life or liberty for the same offence.

The words in our bill of rights, it will be observed, are: "the same offence" not "the same crime." The words used are significant, for the violation of any ordinance of a town or city is an offence, but it is not a crime, which is defined by Bouvier to be "an act committed or omitted in violation of a *public* law forbidding or commanding it." But such ordinance has no operation out side of the town or city and therefore is not a *public* law, and hence a violation of such ordinance is not a crime. From this it follows, that such ordinances may, if the Legislature authorize it; be punished without any presentment or indictment. If a town or city

ordinance inflict punishment by imprisonment, in determining, whether the offence it so punishes is the same as some crime punishable by imprisonment, we should apply the rules, which have been before stated as proper when called upon to determine, whether two crimes are the same offence within the meaning of our Constitution.

Now we have seen that many authorities hold, that, if the two offences consist in doing the same criminal act, they are to be in all cases regarded as the "same offence," when the accused claims the protection of this provision of the Constitution. If this be the correct principle, there can be no question but that a common law or statutory crime must necessarily be regarded as the same offence as the violation of a town or city ordinance punishing the commission in the town or city of such crime. For the offender would become liable to be punished for the crime and for the violation of such city ordinance by the commission of the "same criminal act." If these decisions are to be followed, he is entitled to the protection of this provision of our Constitution, as the crime and the violation of the town or city ordinance must be regarded as the "same offence" within the meaning of the Constitution. But as there is great diversity of opinion as to whether the "same criminal act" and the "same offence" ought always to be regarded in interpreting this provision of the Constitution as having the same meaning, it might not be entirely safe to depend on this as the only ground on which to base our conclusion.

But without depending on this class of cases only, which are conflicting, we will be led to the same conclusion, if we follow the law as laid down by another class of cases cited above, and which are admitted almost universally to lay down the law correctly. I refer to those cases above cited, which hold, that, two crimes, which differ from each other only in this, that the one includes the other but is rendered the more criminal by aggravating circumstances, which accompany its commission, will be regarded as the "same offence" within the meaning of our Constitution.

If we apply these principles to the case of a town or city undertaking to punish by imprisonment for a crime punished in like manner by the State, the only difference between the

offences being that one is aggravated by being committed in the town or city, the offender can not be punished by imprisonment twice for these offences; and, as he may be certainly punished by the State by imprisonment, the ordinance of the town or city, under which he might be again punished also by imprisonment must be void. Bearing in mind the difference between a crime and the violation of a town or city ordinance, the one being a crime proper and the other only an offence against the town or city, and the fact that our Constitution, as we interpret it, prohibits the punishment of any one twice for the same offence, whether it be a violation of a town or city ordinance, or a crime, we reach the conclusion, that the Legislature may authorize the authorities of a town or city to provide by ordinances for the punishment of all offences by a summary proceeding, whether they be crimes or not, and whether if crimes they are punished by the State by fine only or by fine and imprisonment, provided that the defendant be allowed to appeal to a court where the case can be tried by a jury; but can not authorize them to pass an ordinance punishing by imprisonment a crime, which the State punishes by imprisonment. And the Legislature may authorize the municipal authorities to do this, though the offence against the town or city, where punishment is authorized to be provided for by an ordinance, be an offence which the State does not punish as a crime, or an offence, which the State does punish as a crime but does not punish by imprisonment. As for example, assault and battery in this State, which as a crime is punished only by fine, may be punished by a town ordinance by imprisonment.

It should be noted too, that, where the authorities of a town or city can only provide a fine as a punishment for the violation of a particular ordinance, the payment of such fine may be enforced by imprisonment or by working on the streets of the town or city or in any other manner authorized by the legislature and provided for by the ordinance. For the imprisonment for the non-payment of the fine can not be regarded as an imprisonment for the original offence.

Applying these principles to the case before us it presents no difficulty. For if it was error to consider, that the ordinance of the town of Moundsville, under which the plaintiff

in error was adjudged to pay a fine of $20.00 and be imprisoned in the county-jail of Marshall county for fifteen days provided for the punishment of an offence against the town, which was the same as the crime defined in sec. 1, ch. 32, of the Code, (Warth's Code, p. 216.) Still this ordinance of the town of Moundsville would not be void as violating our bill of rights, because the penalty provided for committing this crime is a fine of not less than $10.00 nor more than $100.00, and therefore, as this crime is not punished by imprisonment, the same offence may, if the legislature authorize it, be punished by imprisonment as well as by fine, when committed in a town or city.    By ch. 92, § 28, p. 232 Acts 1882, the Legislature expressly authorizes any town having less than 2,000 inhabitants, which includes, we judicially know, the town of Moundsville, "to prevent the illegal sale of all intoxicating liquors, drinks and mixtures in said town." And by sec. 29 of said act it is provided that "the council shall have power to make and pass all needful orders, by-laws, *ordinances*, resolutions, rules and regulations, to carry into effect these powers, which are not contrary to the constitution and laws of this State; and to prescribe, impose and enact reasonable fines, penalties and imprisonments in the county-jail, for a term not exceeding thirty days for a violation thereof."

The authority is here expressly given to pass the ordinance, if the law itself was not contrary to our constitution, and we have seen it was not.    The fine as well as the imprisonment imposed by this ordinance and by the circuit court in this case were in our judgment reasonable.    But though it has been insisted in the argument of the counsel for the plaintiff in error, that this ordinance of the town of Moundsville provided for the punishment of an offence declared by the State to be a crime and punished as such, yet we think the two offences are not the same under the rules we have laid down for determining this question, even if we adopt these decisions, which have been most liberal to the accused. The State offence is " selling, offering or exposing for sale spirituous liquors, wine, porter, ale or beer or any drink of a like nature without a State license."    The offence, the punishment for which is provided by this ordinance of the town

of Moundsville, is " selling, offering or exposing for sale spirituous liquors, wine, porter, ale or beer or any drink of a like nature without a license therefor from the town of Moundsville." The offence in each case is not simply the sale of spirituous liquors, but in the one case it is such sale without a State-license, in the other case such sale without a town-license. Now there is nothing in the law, as I understand it, which forbids the town from granting such license, till the county court has granted a State-license. Though if a person obtained a town-license without getting a State-license, and sold spirituous liquors under it, he could be prosecuted therefor as violating the State-law ; and so if having obtained a State-license he sold liquor thereunder in the town without a town-license, he could be punished under this ordinance for so doing. So both licenses are usually taken out at the same time. Yet as there is no requirement of the law that the State and town-license shall be issued at the same time, we must regard it as legally possible, however improbable it may be, that only one of these licenses may be issued. In this case, for instance, it may be that the plaintiff in error has obtained from the county court of Marshall a State-license to sell spirituous liquor in the town of Moundsville, and yet obtained no license from the town. If this be so, he has offended against the ordinance of Moundsville by selling spirituous liquors in the town without a town-license, and yet has not violated the State-law. This being the case, the State-crime and the offence of violating this ordinance can not be the same, as the ordinance has been violated and the statute has not been violated. There are a number of authorities, which hold that the selling of spirituous liquors without a State-license and the selling of spirituous liquors without a town-license are two distinct offences. (*State* v. *Harper*, 58 Mo. 531; *Ex parte Sibenhaur*, 14 Mo. 372.) That the legislature regarded these two offences as distinct, is shown by sec. 10 of ch. 32 of Code (Warth's Code, p. 220), which provides, when a town-license is required, no State-license shall exonerate a person from the penalty for not obtaining the town-license imposed by the town.

Under the charter of the town of Moundsville, in this respect the same as the charter of all other towns, which are

incorporated under ch. 47 of our Code, the only authority conferred on the town-council to pass any ordinances to punish any one for the commission of what would be crimes under the laws of the State is, that the council may pass ordinances to " prevent the illegal sales of intoxicating liquors, drinks, mixtures and preparations therein, and to protect the persons and property of the citizens of the town, and to preserve peace and good order therein." This clause doubtless authorizes certain State-crimes to be punished by the municipal authorities; such for instance as assaults and batteries, riots and the like. But there are obviously many State-crimes, which could not be lawfully punished under the ordinances of the town; such for instance as forgery and many others.

It was obviously not the intention of the Legislature to authorize towns to punish generally crimes, which were committed in the town, as the general laws of the State were regarded as sufficiently providing for their punishment. But there were certain offences, which peculiarly affect the peace and good order of the town and peculiarly endanger the persons and property of the citizens of the town ; and these crimes and these only besides the unlawful sale of spirituous liquors have the Legislature authorized towns generally in this State to pass ordinances to prevent and if committed to punish; and if the town passed ordinances to punish crimes generally of other sorts such ordinances would be null and void.

The town of Moundsville and all other towns having less than 2,000 inhabitants are authorized by ch. 47 sec. 24 Warth's Code, page 372, to pass all necessary ordinances to carry out its granted power not contrary to the constitution of the State, and for violation of these to impose reasonable fines and imprisonment not exceeding thirty days. We have seen, that the town of Moundsville has not in passing the ordinance under consideration exceeded its powers.

I have taken no notice of the claim of the plaintiff in error, that by our bill of rights he was entitled in this case to a trial by jury, because if he had such right, he clearly waived it by pleading guilty both before the mayor and in the circuit court. But if he had not thus pleaded guilty, it

would really not have altered the case.  He had no right
to demand a jury on his trial before the mayor.  Nor did
the failure of the legislature to make any provision for the
trial of such a case before the mayor by a jury under the
ordinance, under which he was tried, make it a nullity, as is
claimed.  The provision in our constitution, which leads, it is
claimed, to this result, is sec. 10 of the bill of rights. (Warth's
Code, p. 8): "No person shall be deprived of life, liberty or
property without due process of law and the judgment of his
peers."   The charter of the town of Moundsville, Acts of
1866, ch. 60, sec. 9, page 46, provides "that in any case, not
civil, in which a fine exceeding five dollars or imprisonment
in the county jail shall be imposed, the person, against whom
such judgment is, shall have a right to appeal from such
judgment to the circuit court of the county on the same
terms and subject to the same limitation, that appeals are
now allowed from the judgment of a justice of the peace.
But in case of appeals other than for fines the mayor or
aldermen shall fix the penalty in an appeal bond to be entered
into by the appellant with good security conditioned that the
appellant shall in case such judgment be affirmed, abide by
and perform the same."   As I understand this provision of
the chapter, the appeal was in this case a matter of right and
no bond or security was required of the defendant, as the
act required such bond and security only in civil cases decided
by the mayor.

Now if it be admitted, that under the constitutional pro-
visions referred to above the plaintiff in error had a right to
a trial by jury, he has not been denied this right ; for on the
appeal being tried in the circuit court he could have had the
case tried by a jury, if he had not pleaded guilty.  Now in
such a case, when the judgment below was not a punish-
ment for a crime but for the breach of a municipal ordi-
nance, he could get this trial as a matter of right unclogged
in the appellate court, and this is sufficient, and in such cases
his constitutional right to a jury-trial has not been invaded
by the summary proceeding before the mayor of Mounds-
ville.   The decisions have generally gone further and held,
that the constitution would not have been violated, had an
appeal-bond been required to pay the costs or had the ap-

peal been otherwise clogged, if the restrictions placed on it were not unreasonable. (*Bars* v. *Bars*, 4 Conn. 535; *Jones* v. *Robbins*, 8 Gray. (Mass.) 539; *McDonald* v. *Scheel*, 6 Serg. & Rawles 240; *Stewart* v. *Mayer*, 7 Md. 501; *Morford* v. *Burnes*, 8 Yerger 444). I have not examined this question thoroughly and am at present prepared only to say, that this constitutional provision cannot be violated, when, as I understand the case here, the defendant has a right to appeal without any restriction, except that it be done in a reasonable time fixed by the statute, and when he can have a trial by jury in the appellate court. In such case it must be held, that his constitutional right to a trial by jury, if he has such right, has not been denied him. But even this question does not here arise, as the defendant waived such right by pleading guilty.

For these reasons the judgment of the circuit court of Marshall rendered November 30, 1882, must be affirmed, and the defendant in error must recover of the plaintiff in error its costs in this Court expended and $30 damages.

AFFIRMED.