# CHARLESTON.

## JUDY v. LASHLEY.

Submitted September 11, 1901.    Decided March 1, 1902.

1. MUNICIPAL CORPORATIONS.—*Police Power—Charter.*

The police power of a municipal corporation depends upon the will of the legislature, and a city, town or village can only exercise such police power as is fairly included in the grant of powers by its charter.  (p. 630).

2. FORM OF CITY CHARTERS.—*Police Power Limited.*

Section 28 of chapter 47 of the Code, by vesting in the councils of municipal corporations power and duty "to protect the persons and property of the citizens of such city, town or village, and to preserve peace and good order therein," does not confer power to punish acts made criminal by the State law and fully covered thereby, except such as would be attended with circumstances of aggravation not included in the State law.  Such power must be specifically and expressly given by the legislature before it can be exercised by such corporation.  (pp. 630, 631).

3. DEADLY WEAPONS.—*When Crime to Carry.*

The carrying of deadly weapons being an offense fully provided for and punished by law and being an act not in itself amounting to a breach of the peace, cannot be made an offense and punished by a municipal ordinance, unless expressly authorized by the municipal charter.  (p. 632).

4. PROHIBITION.—*Mayor's Jurisdiction—Ordinance.*

Prohibition lies to restrain the mayor of a town, incorporated under the provisions of chapter 47 of the Code, from imposing a fine upon a person for carrying deadly weapons and from collecting the same, under an ordinance making such act. an offense and punishing it by fine and imprisonment, as such ordinance is void and the mayor is without jurisdiction in the premises.  (p. 635).

F. J. Judy filed his petition against C. G. Lashley for Writ of Prohibition in this Court.

*Writ Awarded.*

W. H. KELLY, for Petitioner.

CUNNINGHAM & STALLINGS, for respondents.

POFFENBARGER, JUDGE:

Fred Judy presented his petition June 9, 1900, praying a writ

of prohibition, restraining C. G. Lashley, mayor of the town of Davis, from proceeding against the petitioner on a charge of carrying a deadly weapon, and from attempting to collect a fine of twenty-five dollars imposed upon him for said offense.

There is some controversy between counsel as to whether said proceeding by the mayor was under the ordinances of the town in his capacity as mayor or under the state statute, the mayor being, by law, *ex officio* a justice of the peace. Code, chapter 47, section 39. The transcript of the mayor's proceedings are not with the papers, but it seems to be conceded that there is nothing in it to indicate that the proceeding was under the statute, the record showing only that as mayor he tried and found petitioner guilty and asessed the fine against him.

Sections 26 and 52 of the ordinance of the town, concerning offenses and their punishment, reads as follows: "It shall be unlawful for any person to carry about his person, any revolver or other pistol, dirk or bowie knife, razor, slung shot, billy, metallic or other false knuckles or any other dangerous or deadly weapon of like kind or character, nor shall any person sell or furnish any such weapon as is hereinbefore mentioned, to a person whom he knows, or has reason, from his appearance, or otherwise, to believe to be under the age of 21 years; but nothing herein contained shall be so construed as to prevent any person from keeping or carrying about his dwelling house or premises such revolver or other pistol, or from carrying the same from the place of purchase to his dwelling house, or from his dwelling house to any place where repairing is done, to have it repaired, and back again."

"If any person commit any of the offenses prohibited or enumerated in any of the sections of the foregoing ordinance, he shall forfeit and pay a fine of not less than one, nor more than thirty dollars, and may, in the discretion of the Mayor be imprisoned not exceeding thirty days, except for a violation or an offense as provided in section 26, when the party shall be fined not less than twenty-five dollars, nor more than two hundred dollars, and may at the discretion of the Mayor, be confined in prison not less than one, nor more than twelve months. And if any male person so convicted and fined, under any of the sections of this chapter, and fail or refuse to pay said fine and costs, the Mayor may sentence said offender to work same out upon the streets of said town, or other work in said corporation

at the rate of one dollar per day and board until such fine and costs are paid, under the direction of such officer or person as the Mayor may select, and may provide for his safe keeping while performing such work, and if deemed necessary, shall provide a ball and chain to be attached to his person for such purpose as is provided in chapter 36, section '11 of the Code of 1891."

It is urged for the petitioner that chapter 47 of the Code does not authorize a municipal corporation to punish acts already made criminal under the state law, and that the ordinance making the carrying of deadly weapons an offense punishable by the municipal authorities is void. It is further contended that the mayor, in taking cognizance of the offense, is acting without jurisdiction. In passing upon these questions, it becomes necessary to look to the source and extent of municipal criminal jurisdiction and power.

On this subject it is said in Tiedeman's Lim. Pol. Pow. at s. 212 that, "A large part of the police power of the State is exercised by the local governments of municipal corporations, and the extent of their police power depends upon the limitations of their charters. They are creatures of the State, and the superior control of the State is almost without limit. The police power of a municipal corporation must depend upon the will of the legislature, and in order that a city, town or county may exercise a particular police power, it must be fairly included in the grant of powers by the charter." The soundness of this proposition cannot be questioned.

Looking now to the powers delegated by the legislature to municipal corporations of this State, it is found in section 28 of chapter 47 of the Code, that it is the duty of the councils of such corporations, among other things, "to protect the persons and property of the citizens of such city, town or village, and to preserve peace and good order therein." Section 29 of said chapter further provides that "To carry into effect these enumerated powers, and all others conferred upon such city, town or village, or its council, by this chapter or by any future act of the legislature of this State, the council shall have power to make and pass all needful orders, by-laws, ordinances, resolutions, rules and regulations, not contrary to the constitution and laws of this State; and to prescribe, impose and enact reasonable fines, penalties and imprisonments in the county jail or the

place of imprisonment in said corporation, if there be one, for a term not exceeding thirty days, for a violation thereof. Such fines, penalties and imprisonments shall be recovered, and enforced under the judgment of the mayor of such city, town or village, or the person lawfully exercising his functions."

The offense, in question here, is clearly an offense against the peace. It is not only so regarded, but is so classed by chapter 148 of the Code. Unless the ground taken by the petitioner that the power, thus delegated by the legislature, does not include the right to punish acts already made criminal under the State law, is tenable, it is manifest that the town may, by ordinance, declare the carrying of deadly weapons an offense and punish it, for it is expressly given power to preserve peace and good order within its limits.

On this question there is much conflict in the decisions of the various states. In New York and Alabama and Missouri and some other states it has been held that, under a general authority delegated by the legislature, such as to preserve the peace and regulate the police, a municipal corporation may impose penalties for the commission of acts which, by the state law, are declared to be crimes. *Rogers* v. *Jones,* 1 Wend. (N. Y.) 261; *Mayor of Mobile* v. *Allaire,* 14 Ala. 400; *Mayor* v. *Rouse,* 8 Ala. 515; *Intendant of Greensboro* v. *Mullins,* 13 Ala. 341; *Amboy* v. *Sleeper,* 31 Ill. 499; *State* v. *Crummey,* 17 Minn. 72; *Brownsville* v. *Cook,* 4 Neb. 101; *Levy* v. *State,* 6 Ind. 281; *St. Louis* v. *Bentz,* 11 Mo. 61; *State* v. *Gordon,* 60 Mo. 383. In some of the cases it is further held that a conviction under an ordinance may be pleaded in bar of a prosecution in the state court for the same act. *State* v. *Cowan,* 29 Mo. 330. This is on the ground that the constitution forbids that a person shall be twice punished for the same offense. There is another class of cases which hold that the party may be punished under both the state and the municipal law. *Fox* v. *State,* 5 How. (N. Y.) 410; *Moore* v. *People,* 14 How. (N. Y.) 13; *Slaughter* v. *People,* 2 Doug. (Mich.) 334. In some other states it is held that a state cannot punish, by ordinance, what is already an offense by the statute. *State* v. *Keith,* 94 N. C. 933; *In Re Sic,* 73 Cal. 142; *Menken* v. *Atlanta,* 78 Ga. 668. Cooley's Cons. Lim. 239, says: "Nor will conferring a power upon a corporation to pass by-laws and impose penalties for the regulation of any specified subject necessarily supersede the State law on the same subject, but the

State law and the by-law may both stand together if not inconsistent. Indeed, an act may be a penal offense under the laws of the State, and further penalties, under proper legislative authority, be imposed for its commission by municipal by-laws, and the enforcement of the one would not preclude the enforcement of the other." It will be noticed that Judge Cooley says these penalties may be imposed under proper legislative authority. From this it is clear that he does not mean to say that such corporations have any inherent power, or power of themselves, to punish acts which are punishable under the State law. He does not pursue the question as far as does Judge Dillon who says, at s. 367 of the 4th Ed. of his work on Munic. Cor.: "Questions of difficulty have arisen in consequence of grants of power to municipal corporations to make ordinances respecting matters and acts already regulated by general statute, and, if criminal in their nature, punishable under the laws of the State. Hence, the same act comes to be forbidden by general statute and by the ordinance of a municipal corporation, each providing a separate and different punishment. The same transaction may, if complex in its nature, be in one part of it an offense against the general law, and in another against the by-law; but such cases present no difficulty. But can the same act be twice punished, once under the ordinance and once under the statute? The cases on this subject cannot be reconciled. Some hold that the same act may be a double offense, one against the State and one against the corporation. Others regard the act as constituting a single offense, and hold that it can be punished but once, and may be thus punished by whichever party first acquires jurisdiction." In the next section the author presents his own conclusion, deduced from the authorities, as follows: "Where the act is, in its nature, one which constitutes two offenses, one against the State and one against the municipal government, the latter may be constitutionally authorized to punish it, though it be also an offense under the State law; but the legislative intention that this may be done ought to be manifest and unmistakable, or the power in the corporation should be held not to exist. Where the act or matter covered by the charter or ordinance, and by the State law, is not essentially criminal in its nature, and is one which is generally confided to the supervision and control of the local government of cities and towns, but is also of a nature to require general legislation, the intention that

the municipal government should have power to make new, further, and more definite regulations, and enforce them by appropriate penalties, will be inferred from language which would not be sufficient were the matter one not specially relating to corporate duties, and fully provided for by the general laws. Such are the general principles to be extracted from the authorities."

It is evident that the exercise of such municipal power cannot extend to the whole range of acts made criminal by the State law. There must be a limit, and in the cases, holding that double punishment may be inflicted, under an indefinite delegation of power, the acts in question were generally those constituting the milder offenses under the State law. Usually they are such as bear a direct relation to or are fairly to be included within the terms of the power delegated to preserve peace and good order. This is well stated by Lumpkin, Judge, in *Mayor of Savanah* v. *Hussey,* 21 Ga. 86, "Can a municipal corporation legislate *criminaliter* upon a case fully covered by a State law?

I am aware that decisions may be found to support the affirmative of the foregoing propositions. 1 Wend 237; 16 Ala. Rep. 400; 8 *Ib.* 515; Bay. Rep. 382; 11 Mo. 61; 12 B. Munroe 25. Without stopping to investigate the applicability of these precedents to the point under enquiry, I ask, what limit will you set to this power? If it may legislate by an ordinance for any one offense, may it not for every crime embraced within the penal code? Arson in a town or city is provided for by the public law; why not pass a by-law prescribing another mode of trial, and a different punishment for the same offense if committed within their limits. So of the crimes of forgery, counterfeiting, perjury, etc. Such I am sure, has not been the understanding of the country.

Under the general grant of power delegated by the Act of 1849, the city authorities may cover all cases not provided for by the paramount authorities of the State. Their code already fills a volume of some five hundred pages. All those ordinances regulating cemeteries, commons, markets, vehicles, fires, exhibitions, lamps, licenses, water-works, watch, police, city taxes, city officers, health, nuisances, etc., are legitimate and proper. Nay, I might go further, and concede, that where the State law defines an offense generally, and prescribes a punishment, without reference to the place where it is committed, in town or country, and the act when committed in the streets and public places of

the city, would be attended with circumstances of aggravation, such as an affray, for instance, the corporate authorities with a view to suppress this special mischief, might probably provide against it by ordinance; because that ingredient or concomitant of the crime might not be supposed to be included in the State law. And this is going quite far enough."

This seems to be a conservative position on the question and one which extends to municipal corporations all power that is necessary, supplemented by the State law, which extends throughout all cities, towns and villages of the State, to fully protect the interest and give complete exercise of all the police power of the State within municipal corporations. What more is needed? What good reason can be assigned for extending greater power when the statute does not specifically and expressly grant it? So remote from a breach of the peace is the carrying of weapons that at common law it was not an indictable offense, nor any offense at all. 5 Am. & Eng. Ency. Law, (2 Ed.) 729. The legislature has empowered the municipal corporations of this State to preserve peace and good order therein, but the carrying of weapons, although having a remote tendency to a breach of the peace, is more objectionable on the ground of its danger to life and limb of the citizens of the State. It is probably on that account more than any other that it is made a statutory offense in nearly all of the states of the Union. It seems to be of such character as to be clearly without the limited and indifinite power conferred upon municipal corporations in this State. It would be just as reasonable to say that that power extends to the punishment of petit larceny and arson, under the power given to protect the property of the citizens, but no such authority is claimed or exercised by our municipal corporations. It is left to the jurisdiction and cognizance of the State courts. For these reasons, and under these principles, the ordinance of the town of Davis, in reference to the carrying of deadly weapons and punishment therefor, must be held invalid. and the mayor is without jurisdiction to take cognizance as mayor of the offense charged.

This position must not be confounded with the position announced in *Moundsville* v. *Fountain,* 27 W. Va. 182, and *Jelly* v. *Dils,* 27 W. Va. 267, holding that municipal corporations may punish for unlawful retailing of spirituous liquors, etc. The statute expressly gives power to such corporations to impose li-

cense taxes upon the privilege of making such sales, from which it results that the council must have power to enforce its regulations. That is a very different matter from the case under consideration.

But it is insisted that the writ of prohibition should not go for the reason that being *ex officio* a justice of the peace, the mayor may take cognizance of the offense and punish it under the statute. This position would be well taken if it appeared that the mayor was proceeding in that way. But it does not appear except from the argument of his counsel. In the absence of any affirmative showing to the contrary, it appearing that the town has this ordinance, the presumption must be that the mayor is proceeding under the ordinance and not under the statute. Such an ordinance cannot be permitted to be enforced in that way. The mayor cannot enforce the ordinance until his authority to do so is questioned and then say he is acting not as mayor but as a justice of the peace. By such proceeding every city and town in the State could pass and enforce such an ordinance except in particular cases. But on this question of the authority by which the mayor claims to be proceeding, his answer is conclusive, for it sets out the ordinances and claims their validity and his right and power and jurisdiction to take cognizance of the offense under them, and it does not deny the allegation in the petition that he is so proceeding, and that the petitioner has been by him convicted, under the ordinance.

On the demurrer it was argued that the town of Davis should have been made a respondent. The town is not a necessary party where the defendant is a governmental agent and the matter involved is purely public in its nature. Neither the State nor the municipality, having power and authority delegated by the legislature, is a necessary party. "When the suit complained of is brought by a private person, he may be joined as a defendant. But when it is a suit or prosecution on behalf of the government, the writ of prohibition can go to the court only." *Smith* v. *Whitney*, 166 U. S. 167, 176; 3 Bl. Com. 112; *Ex parte Braudlacht*, 2 Hill (N. Y.) 367; *Thomson* v. *Tracy*, 60 N. Y. 31; *Railroad Company* v. *Commissioners*, 127 Mass. 50. In the last case it is said "A writ of prohibition, like a writ of *mandamus* or of *certiorari*, is properly sued out in the name of the Crown or the State; the only necessary defendant is the

tribunal whose proceedings are sought to be restrained, controlled or quashed."

All questions in the case having been disposed of except that of costs, the next inquiry is whether the petitioner is entitled to costs. "A judge of the inferior court, although the record party,. cannot be taxed with the costs." 16 Ency. Pl. & Pr. 1143; *State* v. *Superior Court,* 5 Wash. 518.

For the reasons hereinbefore given, the writ prayed for must be awarded, but without costs to the applicant.

*Writ Awarded.*