# CHARLESTON.

STATE EX REL MORLEY *v.* GODFREY, MAYOR, ETC.

*and*

STATE EX REL ATKINSON *v.* GODFREY, MAYOR, ETC.

Submitted September 2, 1903—Decided November 14, 1903.

1. GAMING.

Chapter 151 of the Code fully covers and includes gaming and gaming devices, so far as the legislature deemed it expedient to legislate upon the subject. It specifically defines what shall be offenses thereunder, and fixes fines and penalties for violations thereof. (p. 57).

2. GAMING—*City Charter.*

Unless the charter of a city, town or village confers upon it authority so to do, the council thereof has no right or power to pass an ordinance to regulate or prohibit gaming or gaming devices, or to prescribe and enforce penalties for a violation of such ordinance. *Held*: That the ordinance passed by the council of the town of Bramwell on the 6th day of July, 1903, is unauthorized and void. (p. 58).

Prohibition from the Circuit Court, Mercer County.

Writ of prohibition by E. W. Atkinson and J. E. Morley, petitioners, against Mayor, etc.

*Writ Awarded.*

H. A. RITZ and J. M. McGRATH, for petitioners.

J. E. ENGLE and F. W. BROWN, for respondents.

MILLER, JUDGE:

The town of Bramwell in the county of Mercer is a municipal corporation, chartered as such by the circuit court of that

county, under the provisions of chapter 47 of the Code of West Virginia, and has no other charter. The respondent, A. I. Godfrey, is the mayor thereof, duly elected, qualified and acting as such

On the 16th day of July, 1903, the council of said town made and passed an ordinance, with a preamble, in the words and figures following:

"Whereas, certain persons have, within the corporate limits of the town of Bramwell, openly engaged in gambling by operating a money making device, known as Slot Machine, to the manifest corrupting of the morals of the citizens of the said town:

Now therefore,

Sec. I. Be it ordained by the council of the town of Bramwell, that any person or persons, who shall keep or exhibit any Gaming Table, Faro Bank or Keno Table, or any Slot Machine or any table or machine of like kind, under any denomination, whether the Game be played with Cards, Dice or otherwise, or shall be concerned in interest in keeping or exhibiting such table, bank or machine, shall be fined not less than $100.00.

Sec. II. A second conviction for the offense named in the first section of this ordinance shall be punished by a fine of not less than $100.00 and imprisonment in the town jail not exceeding 30 days.

Section III. Any person who shall play upon any table or machine mentioned in the first section of this ordinance and thereby either wins or loses any sum of money shall be fined not less than $10.00."

It further appears from the record that, at the time and since the passage of said ordinance, petitioner, Morley, was the proprietor of a hotel in Bramwell; that there was in the waiting room or lobby of that hotel, a slot machine, upon which people were allowed to play; that said machine did not belong to Morley, but to petitioner, Atkinson; and that Morley had permitted Atkinson to place the same in the hotel.

On the 9th day of July, 1903, a warrant was issued by said A. I. Godfrey as Mayor of said town of Bramwell against petitioner, J. E. Morley, upon the charge of keeping and exhibiting the said slot machine in violation of the provisions of said

ordinance; and also a warrant against petitioner, E. W. Atkinson, upon the charge of playing upon said machine.

Petitioners were arrested upon the warrants issued against them, respectively as aforesaid, and taken before Godfrey as Mayor, and each required to enter into a recognizance to appear before said mayor at a time fixed, to answer the aforesaid charges. Petitioners then presented their respective petitions to Hon. Joseph M. Sanders, Judge of the Circuit Court of Mercer County, praying that writs of prohibition might issue to prohibit the said A. I. Godfrey, Mayor as aforesaid, from trying petitioners upon said warrants, for the alleged offenses therein charged. The writs prayed for, were denied by said Circuit Judge but upon presentation of similar petitions to a Judge of this Court, a rule was awarded upon each petition against Godfrey, as Mayor of the town of Bramwell, requiring him to show cause, if any, he can, why writs of prohibition shall not issue against him as prayed for.

The same question being involved in both cases, they are considered and disposed of together.

Petitioners allege that said ordinance is invalid; that the council of the town of Bramwell had, and has no authority to pass such ordinance; that the warrants issued by said mayor as aforesaid thereunder, were and are without legal authority, and are, therefore, void. They further contend that the subject of gambling and gambling devices is fully covered by State law, and that the Legislature not having granted power to such municipal corporations to regulate it, the town is without authority to do so.

Respondent, Godfrey, moves the court to quash the rule, and urges, in support of his motion, that the ordinance in question is authorized by a clause of section 28 of chapter 45 of the Code by which, it is required of the council of a city, town or village to protect the persons and property of the citizens of such city, town or village, and to preserve peace and good order therein. The cases of *Moundsville* v. *Fountain,* 27 W. Va. 182; *Jelly* v. *Dils,* 27 W. Va. 267; and *Judy* v. *Lashley,* 50 W. Va. 628, are cited by him.

In the two cases first mentioned, the question of the right of the towns of Moundsville and Parkersburg to require license under their respective charters from persons to sell spirituous

liquors therein and to punish offenders for unlawful sales, was determined in favor of the cities.

In referring to those cases, JUDGE POFFENBARGER, in *Judy v. Lashley,* 50 W. Va. 628, 634, says: "This position must not be confounded with the position announced in *Moundsville* v. *Fountain,* 27 W. Va. 182, and *Jelly* v. *Dils,* 27 W. Va. 267, holding that municipal corporations may punish for unlawful retailing of spirituous liquors," etc. The statute expressly gives power to such corporations to impose license taxes upon the privilege of making such sales, from which it results that the council must have power to enforce its regulations. That is a very different matter from the case under consideration. Those cases do not apply to the cases now before us.

Chapter 151 of the Code devotes twelve sections to the offenses of gaming, lotteries and lottery tickets. It defines the several prohibited acts and fixes the respective fines and punishments for violations thereof. This chapter seems to legislate upon and fully cover the whole subject mentioned in its title. The legislature having thus legislated, has the town of Bramwell power to make and pass the ordinance in question? Points 1 and 2 of the syllabus in *Judy* v. *Lashley, supra,* hold:

"The police power of a municipal corporation depends upon the will of the legislature, and a city, town or village can only exercise such police power as is fairly included in the grant of powers by its charter.

"Section 28 of chapter 47 of the Code, by vesting in the councils of municipal corporations power and duty 'to protect the persons and property of the citizens of such city, town or village, and to preserve peace and good order therein,' does not confer power to punish acts made criminal by the State law and fully covered thereby, except such as would be attended with circumstances of aggravation not included in the State law. Such power must be specifically and expressly given by the legislature before it can be exercised by such corporation."

Said section 28 enumerates certain powers conferred upon the council. Section 29 further provides that, "To carry into effect these enumerated powers, and all others conferred upon such city, town or village, or its council, by this chapter or by any further act of the legislature of this State, the council shall have power to make and pass all needful orders, by-laws, ordin-

ances, resolutions, rules and regulations, not contrary to the constitution and laws of this State; and to prescribe, impose and enact reasonable fines, penalties and imprisonments in the county jail or the place of imprisonment in said corporation, if there be one, for a term not exceeding thirty days, for a violation thereof. Such fines, penalties and imprisonments shall be recovered and enforced under the judgment of the mayor of such city, town or village, or the person lawfully exercising his functions."

There is no specific authority conferred by our statute upon cities, towns or villages to regulate gaming or gambling devices·

In *Gas Co.* v. *Parkersburg,* 30 W. Va. 439, this Court said: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers, and no others: First, those granted in express words; second, those necessarily and fairly implied in or incident to the powers expressly granted; third, those essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable. Any fair, reasonable doubt concerning the existence of power is resolved by the courts against the corporation, and the power is denied. Of every municipal corporation the charter or statute by which it is created is its organic act. Neither the corporation nor its officers can do any act, or make any contract, or incur any liability, not authorized thereby. All acts beyond the scope of the powers granted are void. Much less can any power be exercised, or any act done, which is forbidden by charter or statute. These principles are of transcendent importance, and lie at the foundation of the law of municipal corporations. 1 Dill. Mun. Corp., section 89, (55.)"

In 20 Am. & Eng. Enc. Law, 2 Ed., 1140, the rule is thus stated: "The rule is general that the powers of a municipal corporation are to be strictly construed, and if there is a reasonable doubt of the existence of a particular power, the doubt is to be resolved in the negative."

It is not necessary for the determination of these cases, to decide whether or not the slot machine is included within the meaning of the sections of chapter 151, above stated. The ordinance under consideration places it in the same class as the gambling devices enumerated in section 1 of that chapter; and prescribes penalties for the violation of said ordinance. This,

the council, neither by the express terms of the statute nor by fair implication, had any legal authority to do.

For the reasons stated, the ordinance aforesaid was and is void, and of no legal effect. The motion to quash said rule is therefore overruled, and the writ in each case is awarded, as prayed for.

*Writ Awarded.*

Note by POFFENBARGER, JUDGE, (*concurring*):

It has been suggested that the writ of prohibition does not lie in this case. although the ordinance under which the respondent is proceeding is absolutely void. The argument in support of this position is that the mayor, sitting as a judge, has the power to decide the question of the validity of the ordinance, incidentally in determining the question of the guilt or innocence of the petitioner, and that, having power to begin the consideration of that question, he has jurisdiction within the meaning of the statute. Some decisions are contrary to that position. The first case that seems to be in conflict wtih it is that of *McConiha v. Guthrie*, 21 W. Va. 134, in which a judge of a circuit court was restrained by the writ of prohibition from proceeding to condemn, upon the application of a railroad company, land for railway purposes within twenty feet of dwelling houses, situated on a tract of land through which the railroad company was seeking to acquire a right of way. The statute in force at that time prohibited the taking of land within twenty feet of a dwelling house for railroad purposes, but whether it was in force or had been repealed was a controverted question in the case, upon which the court had to pass. It erroneously decided that the statute had been repealed. Upon the application for the writ of prohibition, this Court held that the statute had not been repealed, and that, although the circuit court had jurisdiction of the parties and of the subject matter, it had exceeded its legitimate powers in awarding the condemnation of dwelling houses. In delivering the opinion, JUDGE SNYDER, admitting that there was jurisdiction of the cause, said: "There are no circumstances under which such houses and lands can be invaded. The question of the right to condemn such houses and land arose incidentally or collaterally during the proceedings,

and the court having no jurisdiction or power to condemn or invade the same, clearly exceeded its legitimate power in appointing commissioners to invade such property. The action of the court in this matter was not an erroneous exercise of conceded jurisdiction, as was the case in the particulars hereinbefore considered, but was entirely without authority or jurisdiction." This clearly means that, in giving the property in question immunity from condemnation, and conferring upon it a status and character which rendered it secure from invasion or molestation by railway companies seeking rights of way, the legislature had incidentally and indirectly imposed a limitation upon the judicial power of the state in respect to condemnation of lands for purposes of public use. In doing that, the legislature had said in effect that no court should have power to condemn it. In deciding this case, the Court does not seem to have regarded it as of the slightest consequence that the circuit court was called to determine whether or not the statute had been repealed. Nothing is said on that subject, as bearing upon the jurisdiction of the court. This decision proceeds upon the theory, apparently, that the circuit court was bound to know the limits of its authority. This Court simply ascertained that the statute was in force and that it did inhabit the act in question, and thereupon awarded the writ of prohibition.

A similar case is that of *Wilkinson* v. *Hoke,* 39 W. Va. 403, in which a writ of prohibition was awarded against a judge of a circuit court, prohibiting the enforcement of a judgment for costs in a case in which a statute declared that no judgment for costs should be rendered. It was a judgment in violation of a plain positive statute, but it might be said that, as the court was called upon to decide whether costs should be awarded, it must consider the case before it in the light of the statute, apply the statute to it and determine judicially whether the cause was such a one as was contemplated by the statute, and, therefore, having the right to consider that question, it had jurisdiction. But this objection seems not to have been made.

Another case of the same general nature is that of *Railway Co.* v. *Pinnacle Coal Co.,* 44 W. Va. 574, in which a writ of prohibition was awarded against a justice of the peace, restraining him from the enforcement of a judgment for freight

paid to the railroad company in excess of the rates allowed by a supposed statute. The justice had erroneously decided that this statute was in force but it had been repealed, as this Court held upon the application for the prohibition. The writ was awarded upon the theory that there never had been before the justice any cause of action, or any matter for which he could possibly have rendered a judgment. As there was no statute, limiting the rates to be charged by railway companies, and the cause of action set up by the plaintiff had no existence unless the statute was in force, the court could render no judgment without awarding something which the law did not give. That which was laid before the justice for his action did not amount to a cause of action, and, in taking cognizance of it, he transcended his powers or assumed to have jurisdiction over that which could not constitute the subject matter of jurisdiction for any court.

Another similar case is that of *City of Charleston* v. *Beller*, 45 W. Va. 44, in which a judgment for costs rendered against the City of Charleston in a criminal case, in violation of the statute, was prohibited by this Court. Here, as in the case last above mentioned, the circuit court had nothing before it that could constitute a cause of action for neither the common law nor any statute authorized costs against the city. It was also similar to the case of *Wilkinson* v. *Hoke*, because it was a judgment which the law prohibited. *Judy* v. *Lashley*, 50 W. Va. 628, in which a writ of prohibition was awarded against the mayor of a town, proceeding under a void ordinance to enforce a judgment for a fine, is a case almost like the one under consideration now. The only difference is that the application for the writ in *Judy* v. *Lashley* was not made until after judgment, while in this case, it came before judgment. In that case, the question now under consideration was not raised. All the argument related to the validity of the ordinance and it was not suggested that, although the ordinance was void, a proper case for prohibition had not been made.

These decisions hold that an inferior court cannot uphold its jurisdiction upon the ground that it has a right to consider, and is bound to consider, the law determining its jurisliction. It will be observed that the law which set limits upon the jurisdiction in all these cases, related to the matters with respect

to which the court was called upon to act, and only incidentally restricted the power of the court, and did not relate directly to jurisdiction.

The case of *Buskirk* v. *Judge,* 7 W. Va. 91, may possibly be in conflict with them. A prohibition was applied for to restrain the judge of a circuit court from trying a man upon an indictment for murder, upon the ground that, at the date of the application, there was a statute in force which required that, in all cases of felony, the respondent should have a preliminary examination before the county court before he could be put on trial in the circuit court, unless such right were waived, and that he had not waived it but had demanded it, and it had been refused. This Court refused the writ, holding that the circuit court had jurisdiction to say whether the defendant was entitled to a preliminary examination, and that if, in passing upon that question, it erred in denying the right claimed, and put him upon his trial without such examination, the act of the court would not be in excess of its powers nor beyond its jurisdiction, but simply an error which would be corrected by the appellate court on a writ of error. HAYMOND, JUDGE, delivering the opinion of the Court, said the writ was directed to the judge and parties to a suit in an inferior court, commanding them to cease from the prosecution thereof, upon the suggestion either that the case originally, or some collatteral matter arising therein, did not belong to that jurisdiction, and that beyond these two grounds, it seemed that the court would not interfere. Proceeding, he said: "When the matter is within the general jurisdiction of the court below, and in the conduct of the trial they have not exceeded their authority, the court above will not, on an application for a writ of prohibition, inquire whether they have decided right or not."

Which of these two propositions most nearly conforms to the principles of the common law, relating to the subject of prohibition? If it appears that, by the common law, the scope of the writ of prohibition is broader than that given to it in *Buskirk* v. *Judge,* the result will tend to show that the proposition announced in the other cases is the true rule.

The rule of the common law was announced in *Mendyke* v. *Stint,* 2 Mod. 272, as follows: "First, That if any matter appears in the declaration which showeth that the cause of action

did not arise *infra jurisdictionem,* there a prohibition may be granted at any time. Secondly, If the subject matter in the declaration be not proper for the judgment and determination of such court, there also a prohibition may be granted at any time. Thirdly, If the defendant, who intended to plead to the jurisdiction, is prevented by any artifice, as by giving a short day, or by the attorney's refusing to plead it, etc., or if his plea be not accepted or is overruled; in all these cases a prohibition likewise will lie at any time." This proposition is also laid down in 8 Bacon. Abr. 232. The second one of the propositions above laid down may cover the question here under consideration, but the cases illustrating its application were generally those in which it appeared that the inferior court had not jurisdiction of the subject matter because the subject matter belonged to the jurisdiction of some other court. Thus, in *Curling* v. *Long,* Comb. 261, a prohibition went from the King's Bench to the chancery court of Cinque Porte at Sandwich, inhibiting the trial by that court of a right by custom to charge four pence per pound for all freight taken from the pier of Ramsgate. The bill set up this right, predicated the cause of action upon it and prayed a discovery. Holt, C. J., said the writ might go as to so much of the bill as pertained to the establishment of the right, saying "You must not try that there." The court was permitted to proceed as to so much of the bill as related to the discovery. In *Rowland* v. *Hockenhulle,* Ld. Ryd. 698, the court of Exchequer of Chester, a chancery court, was prohibited from proceeding to try a question of freehold. In *Delvye* v. *Proudfoot,* 1 Show. 396, a prohibition was granted against the commissioners of policies of insurance, whose jurisdiction extended to suits by the insured against the under-writers. A suit at common law had been commenced in the King's Bench on the policy, and afterwards the defendants summoned the plaintiff before the commissioners to obtain a judgment there that the policy be delivered upon the ground of its having been procured by fraud. As the defense of fraud could have been made under the general issue in the King's Bench, that court had jurisdiction of the matter over which the commissioners attempted to take jurisdiction. Although the commissioners had jurisdiction of the class of cases to which that one belonged, they could not try that particular case, because another superior

court having concurrent jurisdiction of the same class of cases, had taken actual cognizance of that one.

Several illustrations of the use of this writ will be found in 8 Bacon's Abr. 230, 231. There, it is said: "If there be one entire contract above 40s., and a man sue for it in a court-baron, severing it into divers small sums under 40s., a prohibition shall be granted, because this is done to defraud the court of the king." Upon the same ground the writ went to the hundred court and to the court of the Honor of Eye. These were all common law courts, and not spiritual courts, as to which the writ was used far more extensively.

In *Mayor, etc., of London* v. *Cox and Others*, L. R. 2 H. L. 239, the common law principles governing the writ of prohibition are extensively discussed, in answering questions propounded by the House of Lords to the judges. And there it is clearly shown that prohibition lies where an inferior court does an act which is prohibited by the statute. The statute of Westminister The First, enacted, "of great men and their bailiffs and others (the King's officers only excepted, unto whom especial authority is given), which at the complaint of some or by their own authority attach others passing through their jurisdiction with their goods, compelling them to answer upon them upon contracts, covenants, and trespasses done out of their power and their jurisdiction, when indeed they hold nothing of them, now within the franchise where their power is, in prejudice of the King and his crown and to the damage of the people, it is provided, that none from henceforth so do; and if any do, he shall pay to him that by this occasion shall be attached his damages double, and shall be grievously amerced to the King." Prohibition went against the "great men and their bailiffs" who violated this statute. The opinion in the case last referred to at page 255, says: "The form of writ upon this statute is in the Register, and also in *Fitzherbert, Natura Brevium*, with the following comment: 'If bailiffs, mayors, or others who claim jurisdiction to arrest a man upon a plaint before them, or to attach his goods, etc., do arrest one for trespass or contract, who was not within their jurisdiction, the party arrested, &c., shall have a prohibition directed unto them.'"

Further light is thrown upon the nature and use of this writ

in the following quotation from the opinion in *Mayor &c. of London* v. *Cox and Others*: "In order to look straight at this question we must first shut out certain sources of confusion which have introduced themselves into the argument; and for this purpose we must endeavor to state the law of prohibition distinctly upon points which were mixed up together in the discussion at the bar. As, for instance, it is obvious that our answer must be limited to cases in which there is an absence of · jurisdiction and the prohibition is asked for upon that ground because there are exceptions which, from their very nature, must be first raised in the court below. These occur in cases where there is jurisdiction over the subject matter, and in which, therefore, prohibition will not go for mere irregularity in the proceedings, or even a wrong decision of the merits, *Blaquiere* v. *Hawkins,* but in which it will be granted for a denial or perversion of right, such, for instance, as refusal of a copy of the libel, in which case the prohibition is only *quo usque;* or refusal of a valid plea to a subject matter of complaint within the jurisdiction, in which case, although, if the plea had been received, it might have been tried in the court below, yet, if it be refused, then, upon its validity and truth being established in the court above, the prohibition is absolute: *White* v. *Steele.* In these cases there is entire jurisdiction over the subject matter."

"Another class in which the exception must first be taken in the court below is that in which there is general jurisdiction over the subject matter, but a defence is raised which the court is incompetent to try, as where in a suit to repair a chancel the impropriator pleads a custom for the parish to repair, or raises a question of parish or no parish, which must be tried by a jury; see *Duke of Rutland* v. *Bagshaw.* In such a case the prohibition goes so soon as it appears that the special court cannot proceed without trying the custom, or taking a step towards trying it, even though it be not yet in issue, or a plea thereof refused; *French* v. *Trask; Byerley* v. *Windus.* And in this class of cases, the prohibition acts simply in aid of the special or inferior court, by trying what the court had no jurisdiction to try, and upon an affirmative decision the prohibition is absolute, but upon a negative decision there is a judgment of consultation,

upon which the special or inferior court proceeds with the cause unhampered by the objection."

These authorities seem to put it beyond question that if it appears on the face of the proceedings that the lower court had no right to try the case, there is sufficient ground to warrant the issuing of a writ of prohibition. In some of the cases the subject matter of the action was not proper for the court, in others, although the case was of that general class belonging to the jurisdiction of the court, some collateral matter arose in the case just as it did in *McConiha* v. *Guthrie*, over which the court had no control, and in others the case made out was one belonging to the general class over which the court had jurisdiction, and no such collateral matter arose, but it appeared that the cause of action had not arisen within the territorial jurisdiction of the court. In all these cases, the inferior court was called upon to consider whether it might proceed or not. If that gave jurisdiction to such an extent as to render its decision merely erroneous, and subject to correction on appeal, then there could have been no prohibition in any case. Such clearly was not the common law practice. The inferior court proceeded at its peril. If, in determining the question of its own jurisdiction, it erred, the writ of prohibition issued against it. It was bound to know the law setting the limits upon its jurisdiction, and could no more justify or uphold its jurisdiction, under the plea of ignorance of the law, than can an individual in reference to his contracts or his acts.

This writ has been used less extensively in Virginia and in this State than it was in England in earlier times. Up until 1855, it seems to have been awarded in only three cases in Virginia. *Miller* v. *Marshall*, 1 Va. Cas. 158; *Hutson* v. *Lowry*, 2 Va. Cas. 42; and *Jackson* v. *Maxwell*, 5 Rand. 636. In *Miller* v. *Marshall*, a justice of the peace was prohibited from trying an action involving the title to a freehold estate, a matter not belonging to the jurisdiction of the justice, but to that of the county and corporation courts. In *Hutson* v. *Lowry*, a justice of the peace was prohibited from proceeding in several actions in which a single debt had been divided into several parts for the purpose of attempting to give jurisdiction over an amount in excess of what the law permitted a justice to take cognizance of. Here again the matter shown in the complaint

was not a proper subject matter for the jurisdiction of the court, but belonged to that of a higher court. In both of these cases, the justice had the right to consider, and was bound to consider, whether he could proceed. He decided that question erroneously, the error related to his jurisdiction, and the writ of prohibition went against him. The same procedure was had in *Bodly* v. *Archibald*, 33 W. Va. 229. A similar case is that of *Warwick* v. *Mayo*, 15 Grat. 528, in which, upon a declaration in prohibition against the mayor of a city, the court held that, "In a proceeding before the mayor or other justice to impose a penalty upon a party for obstructing a street, if a claim to the freehold is set up in the defendant or in those for whom he acts, the mayor or justice has jurisdiction to try the fact whether the claim is *bona fide* made. In such case if the claim is *bona fide* made, the jurisdiction of the mayor or justice is ousted; he cannot enquire into the validity of the claim; and he has no power in such case to proceed to a summary conviction." This is a case in which an inferior court had general jurisdiction of the cause of action, and a collateral matter arose in the progress of it which he had no power or authority to try and prevented his further proceeding in the case. It was not a matter which could not be tried at all, as was the collateral matter which arose in the McConiha case, but one which was triable in another court. As the right which confronted the court in *McConiha* v. *Guthrie* is of a higher character, and absolute in its nature, one over which no court had power or authority, it would seem upon reason to have more effectually stopped the progress of the case than the collateral matter which arose in *Warwick* v. *Mayo*, or in the several cases cited from the English books.

A question very similar to this one is mentioned, but not decided, in *Mayo* v. *James*, 12 Grat. 17. Point 1 of the syllabus reads as follows: "The mayor of the city of Richmond has authority to try cases in which a party is prosecuted for the violation of a city ordinance. Quaere: Whether in such a case a prohibition will lie to his proceeding to try the case, on the ground that the ordinance is in conflict with an act of the general assembly. And it seems it will not." The charter of the city conferred upon the mayor power to "take cognizance of such cases as may be tried before him under the laws of the

State, and in all cases in which any ordinance or by-law of the city is alleged to have been violated." The argument was that he had power to decide whether the ordinance in question was valid or not and it was no excess of jurisdiction to do so. Moncure, J., said: "I am inclined to think that this argument is well founded." But he added that it was unnecessary to decide the question. He based his opinion upon the case of *Home* v. *Earl Camden,* 2 H. Bl. 533, and *Arnold* v. *Shields,* 5 Dana (Ky.) 18. *Home* v. *Camden* did not decide the question but left it in the form of a quaere. That was a case of misconstruction of a statute by the prize court in admiralty, a court which proceeded not according to the common law. These courts and the spiritual courts were subjected to the most rigid supervision by the writ of prohibition. They were repressed and restrained by it in cases in which it was not applied to the temporal courts, because when they misconstrued statutes or proceeded otherwise than according to the common law, they substituted for the common law the civil law and the law of nations, and the superior courts jealously guarded against that, prohibiting even where the inferior court had undoubted jurisdiction, and the right to construe the statute incidentally in deciding the case on its merits. It was not regarded as a case of excess of jurisdiction. A case later than that of *Home* v. *Camden* is *Gould* v. *Gapper,* 5 East 345, in which it was held that where a spiritual court misconstrues a statute which results in a judgment contrary to the common law and according to the civil law, prohibition does lie, but it was admitted that it was not a case of excess of jurisdiction. Lord Ellenborough said, in the course of his opinion, in which he reviewed and analyzed numerous cases: "Adverting, I say, to these authorities and circumstances, we cannot feel ourselves warranted in holding, that the grounds of granting prohibitions are *so narrow and limited as to be confined solely to cases of excess of jurisdiction."* In *Home* v. *Camden,* 4 Term R. 22, (382), Buller, Judge, confirms this view. He said: "It is much to the satisfaction of the judges of the present times that the principles, on which prohibitions are granted, are clearly settled. For on reading some of the cases that were determined in the last century, we cannot but see that they happened at a time when it was the fashion of the courts of Westminister Hall to run down the

Ecclesiastical Courts; and Ld. Ch. J. Vaughn himself said: 'It does not seem as if this court had, in some of the cases, bordered on things that were spiritual;' which should not have been done. And in one of the old cases, though it was admitted that the Ecclesiastical Court had jurisdiction, a prohibition to the court of Delegates was granted merely to support the original sentence below."

*Arnold* v. *Shields* fully supports the proposition and opinion of Judge Moncure. He holds that a justice of the peace has jurisdiction to try the right to a penalty which a void statute purports to give and that, in erroneously deciding that the statute is valid, he does not transcend his jurisdiction, but simply commits an error which is the subject of an appeal. In a later Kentucky case, *Pennington* v. *Woolfolk,* 79, Ky. 13, a statute conferring upon a county court power to assess and fix the value of property for purposes of taxation was held unconstitutional, and the county court prohibited from proceeding under it. In *City of Owensboro* v. *Sparks,* 99 Ky. 351, the court refused a writ of prohibition to prevent a municipal court from proceeding to punish offenses which void city ordinances purported to create, holding that the proper method of testing the validity of the ordinance is by appeal from the judgment of the police court. *Ex parte Roundtree,* 51 Ala. 42, holds that, "This court will interfere by prohibition to restrain a circuit judge from sitting as the presiding judge of a statutory inferior court, when the act creating that court, and making him the presiding judge thereof, is declared unconstitutional." In *McInerney* v. *City of Denver,* 17 Col. 302, a writ of prohibition was awarded against a proceeding under a void city ordinance. The Louisiana court has fluctuated in its decisions. In *State ex rel* v. *Judge,* 39 La. 132, the court held that, "When a party is prosecuted for a crime under a law alleged to be unconstitutional, in a case which is unappealable, and where a proper plea setting up the unconstitutionality has been overruled by the judge, a proper case is presented for the exercise of our supervisory power in determining whether the judge is exceeding the bounds of judicial power in entertaining a prosecution for a crime not created by law." The decision in *State ex rel* v. *Judge,* 44 La. 1100, holds the contrary, as does also *State ex rel* v. *Wilder,* 49 La. 1211. In *State ex rel* v. *Rost, Judge,* 49 La.

1451, the last point of the syllabus says: "Even in a case not appealable it would not be too late after conviction and sentence to invoke relief at the hands of this court, through its remedial writs, from the effects of a statute void for unconstitutionality." Upon the whole, the Louisiana court seems not to doubt that in such case the writ lies, but it will not be permitted to go if there is a remedy by appeal. This makes it purely a discretionary writ, and, upon this theory, the decisions may be harmonized.

In *Houseman* v. *Montgomery,* 58 Mich. 364, the court holds that: "Prohibition issues to restrain a court of equity from proceeding with the exercises of power conferred upon it by an invalid act." In *State ex rel.* v. *Orlando,* 32 Minn. 540, a writ of prohibition was allowed against a judge who was assuming to exercise powers which an invalid statute purported to give. In *Donovan* v. *Mayor & Council,* 29 Miss. 247, 64 Am. Dec. 143, a prohibition was awarded against the marshall of a city, restraining him from selling hogs found running at large, under an ordinance directing it, which ordinance was held void for unconstitutionality. In *Zylstra* v. *Charleston,* 1 Bay (S. C.) 382, a prohibition was awarded against proceedings under a void city ordinance. In *State ex rel* v. *Simmons,* 2 Speer (S. C.) 761, proceedings under a void statute were prohibited. In *People* v. *Speers,* 4 Utah, 385, criminal proceedings before a justice of the peace under an unconstitutional statue purporting to give jurisdiction were prohibited. *In re Schumaker,* 90 Wis. 488, holds that: "A writ of prohibition will not be granted against proceedings in the circuit court to incorporate a village, on the ground that the statutes authorizing such proceedings are unconstitutional. The ordinary remedies at law are ample." From the reasoning it is to be inferred that the writ was withheld, not because it could not be granted, but in the discretion of the court.

In *Railroad Co.* v. *Commissioners,* 127 Mass. 50, the court held that, "The owner of land taken, by the manager of a railroad owned by the Commonwealth, under a statute which does not make adequate provision for the payment of compensation for the land so taken, may have a writ of prohibition to the county commissioners to prevent them from proceeding with the assessments of the damages caused by the taking." In *Sweet* v. *Hulbert,* 51 Barb. (N. Y.) 312, a writ of prohibition was

awarded to prohibit a county judge from appointing commissioners to carry into effect an unconstitutional statute, providing for the issuing of bonds by a municipal corporation in aid of the construction of a railroad. In the syllabus it is said: "A writ of prohibition issues, to forbid a court and party to whom it is directed, from proceeding in any matter designated, then pending before it. It will lie to prevent the exercise of unauthorized power by an inferior tribunal, in cases where it has jurisdiction, as well as where it has not jurisdiction." This case seems to be very much like that of *McConiha* v. *Guthrie*. In the opinion it is said: "The property of the citizen cannot be taken from him without his consent, except by due process of law, or by eminent domain, or by taxation. Against every other mode he is protected."

While the question now under consideration is not discussed nor particularly mentioned in the case of *Weston* v. *Charleston,* 2 Pet. (U. S.) 449, that case seems to confirm the proposition that the writ lies against proceedings under a void ordinance. The City of Charleston levied an unconstitutional tax of seven per cent on stock of the United States. The Common Pleas Court of South Carolina awarded a writ of prohibition against the collection of the tax. To the decision of that court, a writ of error was awarded by what was called the Constitutional Court of South Carolina, where the judgment was reversed. To that judgment, the Supreme Court of the United States awarded a writ of error, and reversed the judgment of the Constitutional Court, thereby re-instating the writ of prohibition.

Thus it appears that the decisions are in conflict and that there is a wide difference of opinion among the judges upon the question presented. But the decisions seem to preponderate in favor of the jurisdiction by prohibition in such case. As by the common law, a writ of prohibition could be had upon the mere ground that the cause of action did not arise within the territorial jurisdiction of the court, or that the subject matter of the action belonged to the jurisdiction of some other court, or that a collateral matter which was triable by some court, but not by that particular court, had arisen in the cause, all of which defects might have been treated as mere grounds of error, remediable by appellate proceedings, it would seem strange that a court could not be prohibited when attempting to do

those things which the law had placed entirely beyond the reach of all judicial power. It is true, that the object of the writ in general was to restrain each court within its own jurisdiction, and thus secure order and harmony in the administration of justice. But it has been shown that this writ was used, not only to keep courts within their jurisdiction, but to defend and uphold the common law against the encroachments of other systems of law. Can it be supposed that the laws and courts which were constituted for the purpose of preserving and vindicating the rights of the citizen, were objects of greater solicitude and more jealous care than the rights of the citizen himself? Bacon says that the object of prohibitions in general was the preservation of the rights of the King's Crown and courts and the ease and quiet of the subject. If a court was subject to prohibition when it invaded the jurisdiction of another, took upon itself that which was triable, and was only in fault because of its encroachment upon the jurisdiction of another court with much more reason it ought to be amenable to the writ of prohibition when it undertook to try that which no court could try.

This conclusion is somewhat strengthened by observations on the subject of jurisdiction expressed in the opinion in *Windsor v. McVeigh,* 93 U. S. 282, which are as follows: "All courts, even the highest, are more or less limited in their jurisdiction; they are limited to particular classes of actions, such as civil or criminal; or to particular modes of administering relief, such as legal or equitable; or to transactions of a special character, such as arise on navigable waters, or relate to the testamentary disposition of estates; or to the use of particular process in the enforcement of their judgments. * * * Though the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. * * *

The decree of a court of equity upon oral allegations, without written pleadings would be an idle act, * * * and the reason is, that the courts are not authorized to exert their power in that way." These views are expressed upon the law relating to collateral attack upon judgments. In the law of collateral attack, every thing is intended in favor of jurisdiction where the judgment is rendered by a court of general jurisdiction. But even there, a fatal defect or want of jurisdiction, such as is indicated in the language quoted above, makes the judgment absolutely void for want of jurisdiction. Can it be possible then that, before the court pronounces its void judgment, does an act which it has no power to do, prohibition does not lie when it concededly lies in so many cases of less importance and gravity?

This proposition has been solemnly laid down and asserted by this Court in *Ensign Co.* v. *Carroll,* 30 W. Va. 533. In an action before a justice of the peace for the recovery of money due on contract there had been two new trials, the last of which resulted in a verdict for $5.79. The law allowed no more new trials nor any appeal. Then the judgment debtor filed a bill in equity and, upon it, obtained an injunction to the judgment. That bill did not contain a single allegation of a kind or character to give jurisdiction in equity for a proceeding of that kind. A court of equity can enjoin a judgment where there has been fraud in its procurement of such a character that it could not have been relied upon in the action at law, and under some other peculiar circumstances. No such allegations appeared in the bill. There was nothing in it that gave the court so much as a pretext to say that it presented a cause of action within its jurisdiction. Upon an application to this Court, a writ of prohibition was awarded against the judge who granted the injunction.

The other side of the rule is illustrated in the three cases of *County Court* v. *Boreman,* 34 W. Va. 87, *County Court* v. *Armstrong, Id.* 326, and *County Court* v. *Boreman, Id.* 362. In the first two of these cases, writs had been obtained from the circuit court by parties who had no such interest in the proceeding pending in the county court as entitled them to a writ of prohibition. Moreover, at their instance, the circuit court, by appellate process, undertook to review the action of the county court in respect to a matter that was not a subject

of review by any court. Writs of prohibition were promptly awarded against the judges of the circuit courts. In the last case the parties who had endeavored to have the circuit court review these proceedings by *certiorari* and writ of error, sued out of the circuit court an injunction against the county court, on the ground that in proceeding to alter the location of a bridge and build a new bridge, it was creating a debt in violation of the constitution and laws. This was new and original matter which had not appeared in the proceedings up to that time, and which constituted ground for an original proceeding in a court of equity. Then the county court applied for another prohibition, and this Court, looking at the bill and seeing that it purported to state a cause of action upon which a court of equity had authority and power to act, refused the writ of prohibition, without subjecting the bill to an examination to ascertain whether it was good on demurrer. It was enough that there was something in that bill calling for the exercise of the judicial power of the court. It had the right to say whether the bill was good or bad, having jurisdiction of that class of causes which the bill purported to set out. This was very different from the bill in *Ensign Co.* v. *Carroll,* which made no pretense of setting out a cause of equity jurisdiction, and which furnished nothing upon which the court had any power to act.

This view accords with the law relating to the acquisition of jurisdiction of the person, where the court has jurisdiction of the subject matter. If it has no jurisdiction at all over the person it cannot proceed. There must be something in the form of process and something in the form of return of process in order to give jurisdiction. If there is no pretense of either, then the court has no power to say it has jurisdiction. There is nothing for it to consider in that connection. But if there is a defective process or defective service, then the court has power to decide whether the process or return is sufficient. There is no ground for a writ of prohibition, for, if the court has power to decide at all, its erroneous decision does not take away its jurisdiction. Works on Courts and Their Jurisdiction, p. 634.

In this case the complaint, upon which the mayor issued his warrant and undertook to proceed, set out that as an offense, which the law does not recognize as an offense. It called for a

prosecution in respect to a matter as to which no court has any authority to entertain a prosecution, and the court was bound to know this because its jurisdiction and power was circumscribed and limited to that extent.

How far is the writ discretionary? This is determined by statute in some of the States. Our statute gives it as matter of right. Until 1882, our statute was the same as the act 1 Will, 4 c. 21, but in that year it was amended. But the amendment is only declaratory of the common law, for the action of the court in allowing or refusing it was always reviewable. *Home* v. *Earl Camden,* cited; *Forster* v. *Forster,* L. R. 4 B. & S. 187; *Mayor &c.* v. *Cox,* L. R. 2 H. L. 239. The writ is not favored by the American courts nor by the later English courts, and it is generally refused where the applicant has another adequate remedy.

The common law rule is stated in *Mayor &c.* v. *Cox,* cited, as follows: "There is, indeed, a distinction after sentence between a patent and a suggested defect, for if the party below, whether plaintiff or defendant, thinks proper, instead of moving for a prohibition, to proceed to trial in the special or inferior court, and is defeated, then, if the defect be of power to try the particular issue only (*defectus triationis,* as it has been called), the right to move for a prohibition is gone. If the defect be of jurisdiction over the cause (*defectus jurisdictionis*), and that defect be apparent upon the proceedings, a prohibition goes after sentence: *Robert* v. *Humby.* If it be not apparent, but the party, instead of moving for a prohibition, pleads in the special or inferior court the facts ousting the jurisdiction, and such court improperly decides that it has jurisdiction, he may, notwithstanding such decision, upon satisfying a superior court that it was erroneous, obtain a prohibition: *Thompson* v. *Ingham,* followed in *Chew* v. *Holroyd,* and *Marsden* v. *Wardle.* Where, however, the defect is not apparent, and depends upon some fact in the knowledge of the applicant which he had an opportunity of bringing forward in the court below, and he has thought proper, without excuse, to allow the court to proceed to judgment without setting up the objection, and without moving for a prohibition in the first instance, although it should seem that the jurisdiction to grant a prohibition in respect of the right of the crown is not taken

away, for mere acquiescence does not give jurisdiction: *Knowles* v. *Holden;* yet, considering the conduct of the applicant, the importance of making an end of litigation, and that the writ, though of right, is not of course, the court would decline to interpose, except perhaps upon an irresistible case, and an excuse for the delay, such as disability, malpractice, or matter newly come to the knowledge of the applicant; see *Case of the Admiralty.* The objection in such case is, that the applicant comes too late, not, as here, that he comes too soon; and the cases cited at the bar as to applications after sentence are therefore inapplicable."

For the foregoing reasons I concur in the decision.

Brannon, Judge, (*dissenting*) :

I dissent because I do not think prohibition lies. The mayor had jurisdiction of cases of this general nature, that is, to entertain, hear and determine prosecutions for the violations of town ordinances, and the fact that the ordinance is invalid does not go to say that he has no jurisdiction, but only that there is no law to call for judgment. There is the ordinance colorably warranting the prosecution; but upon hearing it turns out, in law, not to warrant it; but that does not show absence of jurisdiction to hear and determine; does not show that there was not jurisdiction to start with. If the rule is otherwise, then you can prohibit any court from entertaining a case where there is no law to warrant judgment, or where the act is for any reason invalid. The mayor has the right to begin to consider; right to pass on his own jurisdiction, and you prohibit him from doing just what the law commands him to do, consider and determine. Appeal is the regular remedy. This case does not present a question of jurisdiction, but only raises the question whether there is any law to warrant conviction for the particular act. In this Court in late days prohibition is becoming appeal, writ of error and *certiorari* in anticipation of final decree or judgment. *Jelly* v. *Dils,* 27 W. Va. 267; *Buskirk* v. *Judge,* 7 *Id.* 91; dissenting opinion in *N. & W. Co.* v. *Pinnacle Co.,* 44 *Id.* p. 583; *County* v. *Boreman,* 34 *Id.* 362; *Haldeman* v. *Davis,* 28 *Id.* 324. It is better that all courts go on to judgment, as presumably ·right decision will be attained, than to call them to a halt before we know whether they will decide

right or wrong. Judge Moncure expressed a like opinion in *Mayo* v. *James*, 12 Grat. 17. See *King* v. *Doolittle*, 51 W. Va. 91. The Supreme Court of the United States holds this doctrine. It says there must be no other remedy. "Where an inferior court has clearly no jurisdiction of a suit, and the defendant has objected to its jurisdiction at the outset, and has no other remedy, he is entitled as a matter of right to a writ of prohibition." *Smith* v. *Whitney*, 116 U. S. 167. It makes no difference that the amount is too small for appeal. *Ex parte Ferry Co.*, 104 U. S. 519. "Where there is a plain and adequate remedy by appeal, prohibition will not lie." *In re Huguley*, 184 U. S. 297; 22 Sup. Ct. R. 455. "But the sounder doctrine, and that sustained by the great preponderance of authority, is to the effect that prohibition only lies where the court either lacks jurisdiction of the subject matter, or having jurisdiction exceeds it in some incidental matter or in rendering judgment, and no appeal or writ of error or other remedy is available at all, or if available, is inadequate to meet the emergencies of the case, or to afford the relief to which the injured party is entitled." Spell. Extra. Relief, sections 1725, 1727. I think these propositions are good law in *Virginia Supervisors* v. *Wingfield*, 27 Grat. 329. "It will not lie to restrain an inferior court from exercising jurisdiction in a particular case, if such court has jurisdiction of cases of that kind." *Halderman* v. *Davis*, 28 W. Va. 324. "Like all other extraordinary remedies, prohibition is granted only in cases where the usual and ordinary forms of remedy are insufficient to afford redress." High Extra. Rem. section 770. Not to take the place of appeal. *Id.* section 771. "In the exercise of jurisdiction by prohibition it is important to distinguish between the nature of the action which it is sought to prohibit, and the sufficiency of the cause of action stated in the proceedings." *Id.* section 767a.

"Prohibition being an extraordinary writ, cannot be resorted to when the ordinary and usual remedies, such as appeal, writ of error, *certiorari* or other modes of review, or injunction are available." 16 Ency. Pl. & Prac. 1130. I feel sure that Virginia, West Virginia and other American law is, in great weight and better reason, against the writ in this case.

Carry the other doctrine to its logical results. If chancery takes up a case proper for a law court; if a circuit court enter-

tains an indictment for an offense when the statute on which it is based is unconstitutional or does not apply to it, or the common law makes it no offense; if a circuit court rejects a plea in abatement and compels the defendant to defend a suit having no jurisdiction over him; if the writ in an action is void; in these and many other cases prohibition would lie. Why not?